CLYDE W. KEETER v. TOWN OF LAKE LURE, a MUNICIPAL CORPORATION.

(Filed 28 April, 1965.)

**1. Appeal and Error § 22—**

Where there are no exceptions to the findings of fact they are presumed to be supported by evidence and are binding on appeal.

**2. Taxation § 7—**

While legislative declarations will be given great weight in determining whether a proposed municipal bond issue is for a public purpose, such declarations are not conclusive, since the question is for judicial determination.

**3. Statutes § 1—**

Where a statute specifically refers to a prior enactment and stipulates that provisions of such prior statute should be controlling, the prior statute becomes an integral part of the enactment.

**4. Taxation §§ 4, 6— Bonds to be paid solely from revenue of facility to be purchased are not a debt of the municipality.**

Defendant municipality proposed to issue bonds pursuant to G.S. 160-413 *et seq.* and the provisions of Ch. 437, Session Laws of 1963, to purchase a lake lying within its corporate limits, with a dam and electric power generating plant and a trunk sewerage line running through and under the waters of the lake. The municipal resolution provided that there should appear on the face of the bonds a stipulation that they should be payable solely from the revenues derived from the facilities to be purchased, and made provision to take care of emergency repairs and replacements and necessary insurance, all solely from funds derived from the operation of the facilities. *Held:* The bonds will not constitute a debt of the municipality within the purview of the Constitutional requirement for a vote, Art. VII, § 6, or the limitation on the amount of debt, Art. V, § 4.

**5. Municipal Corporations § 4—**

A municipal corporation has only those powers prescribed by statute and those necessarily implied by law therefrom, and any power conferred upon it must be exercised for a public purpose and it may not be authorized even by statute to engage in an enterprise solely for the benefit of private interests.

**6. Same—**

A purpose is a public purpose of a municipality if it has a reasonable connection with the convenience and necessity of the public within the particular municipality, but it is not required that the purpose be for the use and benefit of every citizen in the community or confer upon each an equal benefit, it being sufficient if it be for the use and benefit of the citizens of the municipality in common.

**7. Same; Taxation § 7— Purchase of recreational lake by municipality held for public purpose under facts of this case.**

The findings were to the effect that defendant municipality contained within its boundaries a lake used for recreational purposes and a dam and generating plant used in the manufacture of electricity sold to a private power company under a long-term contract. The facts were further to the effect that the town and surrounding areas are primarily resort and recreational in nature, that many houses located on the shores of the lake had docks and boathouses usable only by permission of the private owner of the lake, and that the regulation of the level of the water of the lake solely in the interest of the generation of electricity might result in impairment or destruction of the use of the lake for recreational purposes. *Held:* The municipality is *sui generis*, and under the facts of the particular case the acquisition by the municipality of the lake with the dam and electric generating plant is for a public purpose, and the fact that the purchase of the property may result in incidental benefit to private persons does not alter this result. Constitution of North Carolina Art. I, § 1, Art. I, § 17.

**8. Municipal Corporations § 36—**

It appearing that defendant municipality had obtained a certificate of convenience and necessity from the Utilities Commission for the operation

of the electric generating plant it proposed to purchase, whether G.S. 160-421, requiring such certificate, is applicable to the facts of this case need not be decided.

APPEAL by plaintiff from *Froneberger, J.,* September 1964 Civil Session of RUTHERFORD. This case was docketed as case No. 36 Fall Term 1964, and submitted to the Court under Rule 10, Rules of Practice in the Supreme Court, 254 N.C. 783, 791. The Court continued the case to the Spring Term 1965 and ordered that oral argument be made, and it was argued as case No. 41, Spring Term 1965.

Suit by plaintiff, a resident of and a taxpayer within the town of Lake Lure, to restrain by permanent injunction the town of Lake Lure, a municipal corporation, from issuing $390,000 of revenue bonds of the town, to be designated as "Lake Lure Electric Power Facility Revenue Bonds," pursuant to the provisions of the Revenue Bond Act of 1938, as amended (G.S. 160-413 *et seq.*), and to the provisions of Chapter 437, 1963 Session Laws, for the purpose of providing funds for the purchase from Carolina Mountain Power Corporation of Lake Lure, a large lake situate within the corporate boundaries of the town, of a dam across the lake, of an electric power generating plant and allied facilities generating hydroelectric power by the use of the waters of the lake, together with a trunk sewerage line running through and under the waters of the lake used by residents of the town. He alleges the funds to be derived from the sale of the revenue bonds will not be used by the town for a public purpose, in that they will be used by the town to generate and sell hydroelectric power to a private utility and to operate a private recreational and tourist business.

At the August 1964 Session of Rutherford Superior Court, Judge Patton denied a motion by plaintiff for a temporary injunction until the final hearing of the suit. At the final hearing before Judge Froneberger, the parties waived a jury trial. He made what he terms findings of fact, but what in reality are to a large extent conclusions of law. These we summarize:

Carolina Mountain Power Corporation owns Lake Lure, a dam across the lake, an electric power generating plant and allied facilities generating hydroelectric power by the use of the waters of the lake, together with a trunk sewerage line running through and under the waters of the lake. Carolina Mountain Power Corporation and Duke Power Company heretofore entered into a contract which requires Carolina to sell and Duke to buy all the power produced by Carolina's electric power plant at Lake Lure, and the town will become subject to the terms of said agreement during the remaining years it is in force. (Judge Froneberger made no finding of fact as to when this contract was entered into by and between Carolina and Duke and as to when it

will terminate. Plaintiff has attached to his complaint, and made a part thereof, a resolution adopted by the governing board of the town of Lake Lure entitled as follows:

"A RESOLUTION AUTHORIZING THE ACQUISITION OF THE LAKE KNOWN AS LAKE LURE, TOGETHER WITH A TRUNK SEWERAGE LINE, DAM AND ELECTRIC POWER GENERATING PLANT AND ANCILLARY FACILITIES, BY THE TOWN OF LAKE LURE, NORTH CAROLINA: AUTHORIZING THE ISSUANCE, UNDER THE PROVISIONS OF THE REVENUE BOND ACT OF 1938 AND CHAPTER 437 OF THE 1963 SESSION LAWS OF NORTH CAROLINA, OF REVENUE BONDS OF THE TOWN PAYABLE SOLELY FROM REVENUES, TO PROVIDE FUNDS FOR PAYING THE COST OF SUCH ACQUISITION; PROVIDING FOR THE COLLECTION OF RATES, FEES AND CHARGES AND FOR THE CREATION OF CERTAIN SPECIAL FUNDS; PLEDGING TO THE PAYMENT OF THE PRINCIPAL OF AND THE INTEREST ON SUCH REVENUE BONDS CERTAIN NET REVENUES OF SAID PROPERTY HEREIN AUTHORIZED TO BE ACQUIRED; AND SETTING FORTH THE RIGHTS AND REMEDIES OF THE HOLDERS OF SUCH BONDS."

This resolution is set forth in the record, pp. 8 through 56. The contract between Carolina and Duke is set forth in its entirety in this resolution, and it states that it was entered into on 26 May 1958, and that "This contract shall continue in force for a term of twenty-five (25) years from and after the 26th day of May 1958.")

All of Lake Lure is situate within the corporate boundaries of the town of Lake Lure, a municipal corporation. Many houses are located on the shores of the lake, and the houses have docks and boathouses. The deeds to these houses convey no right to use Lake Lure, and the docks and boathouses of these houses are subject to removal upon the request of the private owner of Lake Lure. The ownership of Lake Lure carries with it the right to regulate the level of the waters of the lake, and also the right to operate the lake as a resort area. The town of Lake Lure does not own or maintain a sewerage system. By permission of Carolina Mountain Power Corporation, many homes situated on the shores of Lake Lure and within the corporate limits of the town are connected with the trunk sewerage line owned by Carolina Mountain Power Corporation. The North Carolina Stream Sanitation Committee has ordered the town of Lake Lure to construct and provide adequate treatment facilities to take care of the sewerage carried in the trunk sewerage line under the waters of Lake Lure, now owned by the Carolina Mountain Power Corporation.

The town of Lake Lure is centered around Lake Lure, and the town and surrounding areas are primarily resort and recreational in nature.

Carolina Mountain Power Corporation has offered to sell to the town of Lake Lure the lake called Lake Lure, its dam across the lake, its electric power generating plant and allied facilities generating hydro-electric power by the use of the waters of the lake, together with its trunk sewerage line running through and under the waters of the lake. (William C. Rommel, president of Carolina Mountain Power Corporation and a witness for defendant, testified that the sale price was $375,000.)

On 27 March 1964 the board of commissioners of the town of Lake Lure duly and regularly adopted a resolution authorizing the purchase by the town of the properties of Carolina Mountain Power Corporation as above specified. This resolution authorizes the issuance by the town of Lake Lure, under the provisions of the Revenue Bond Act of 1938, and its amendments, and Chapter 437 of the 1963 Session Laws of North Carolina, of $390,000 of revenue bonds of the town of Lake Lure, payable solely from revenues derived from the undertaking for which the bonds were issued, in order to provide for paying the cost of acquisition of such properties; and further provides for the collection of rates, fees and charges, and for the creation of certain special funds; pledges to the payment of the principal of and the interest on such revenue bonds certain net revenues of the property authorized to be acquired; sets forth the rights and remedies of the holders of such bonds; and authorizes the operation by the town of the electric generating plant, and the sale by the town, pursuant to the contract between Carolina and Duke above mentioned, of all hydroelectric power produced by the electric power generating plant.

The proposed Lake Lure Electric Power Facility Revenue Bonds will be issued and sold by the town of Lake Lure, unless the defendant town is permanently restrained from so doing, and the funds to be derived from the sale of said bonds will be used for the purchase of said specified property from Carolina Mountain Power Corporation and for the purpose of paying all expenses incident to the cost of the purchase of said such property.

By the adoption of this resolution the town of Lake Lure does not assume the obligation of operating and maintaining the property of Carolina Mountain Power Corporation authorized by said resolution to be purchased, except to the extent that any or all of said facilities are employed in and are necessary to the generation of electric power, and that said resolution does not provide for the levying of taxes for any purpose.

Based upon these findings of fact and conclusions of law, Judge Froneberger made additional conclusions of law, which we summarize:

The resolution adopted by the board of commissioners of the town of Lake Lure on 27 March 1964 was in all respects regular and within the purview of applicable North Carolina statutes.

The Revenue Bond Act of 1938, as amended (G.S. 160-413 *et seq.*), and Chapter 437 of the 1963 Session Laws of North Carolina are valid legislative enactments and do not violate Sections 1 or 17 of Article I of the Constitution of North Carolina, or of any other provision of said Constitution.

The issuance of $390,000 of revenue bonds of the town of Lake Lure by it under the provisions of the Revenue Bond Act of 1938, as amended, and Chapter 437 of the 1963 Session Laws of North Carolina, for the purpose of purchasing the above specified property from Carolina Mountain Power Corporation, and the operation by the town of Lake Lure of the electric power generating plant and the sale by the town, pursuant to a long-term agreement, of all power produced by said plant to a private utility are for public purposes, and not primarily for the benefit of private interests in violation of Sections 1 or 17 of Article I of the North Carolina Constitution, and the acquisition of this property by the town and its sale of all power produced by the plant to Duke Power Company are for proper municipal purposes of the town.

That the resolution adopted by the board of commissioners of the town of Lake Lure on 27 March 1964 does not exceed the legislative grant of powers to municipal corporations, and does not violate Section 6 of Article VII of the North Carolina Constitution.

Based upon his findings of fact and conclusions of law, Judge Froneberger adjudged and decreed that the plaintiff be denied a permanent injunction as prayed for in his complaint and that he be taxed with the cost of this action.

From this judgment plaintiff appealed to the Supreme Court.

*J. S. Dockery for plaintiff appellant.*
*Hollis M. Owens, Jr., for defendant appellee.*

PARKER, J. Plaintiff has no exception to the judge's findings of fact. Consequently, the judge's findings of fact are presumed to be supported by competent evidence, and are binding on appeal. *Insurance Co. v. Trucking Co.*, 256 N.C. 721, 125 S.E. 2d 25.

Plaintiff has four assignments of error. He first assigns as error the denial of his written request by Judge Froneberger to make conclusions of law based upon his findings of fact to the following effect: (1) The proposed issuance of $390,000 of revenue producing bonds by the town of Lake Lure to purchase the properties of Carolina Mountain

Power Corporation, and the sale by the town, pursuant to a long-term contract, of all power produced by the electric power generating plant to Duke Power Company, are not for public purposes and are not proper municipal purposes of the town, but are primarily for the benefit of private interests in violation of sections 1 and 17 of Article I of the North Carolina Constitution. (2) Since the resolution by the governing body of the town of Lake Lure to issue revenue producing bonds to acquire this property contains no provisions for reserves for extraordinary maintenance or repairs, the resolution exceeds the legislative grant of power to municipal corporations, "to the extent that tax revenues shall be expended or pledged for the operation and maintenance of the lake and sewerage facilities violates Article VII, section 6, of the State Constitution, in the absence of approval by the voters."

His second assignment of error is broadside: "The court erred in its conclusions of law and signing of the judgment." His third and last assignments of error are: (1) The court erred in denying his "motion to set the judgment aside for errors of law," and (2) the court erred in denying his "motion for a new trial."

Defendant is proceeding under the provisions of the Revenue Bond Act of 1938, as amended, codified as G.S. Ch. 160, Art. 34 (G.S. 160-413 through G.S. 160-424), and under the provisions of Ch. 437, 1963 Session Laws of North Carolina.

England and Scotland used revenue producing bonds much earlier than did the United States. Municipal ownership of gas plants, street tramways, electric lighting systems, etc., was accomplished by means of revenue bond financing. The first municipal gas works in England was established at Salford in 1817. Its original cost was paid by taxation, but subsequent authority was granted to incur indebtedness secured by the gas works and its rates and profits. 12 Indiana Law Journal 266, "Indiana Municipal Revenue Bond Financing" (April 1937). A comprehensive discussion of revenue bond financing is found in 35 Michigan Law Review, pp. 1-43.

Perhaps the first decision upon the validity of revenue obligations in the United States by a Court of last resort was by the Supreme Court of Washington in the case of *Winston v. City of Spokane,* 12 Wash. 524, 41 P. 888 (1895). The bonds were to be paid out of 60% of the receipts of the waterworks system, and the Court held the obligations were not debts of the municipality.

In 15 McQuillin, Municipal Corporations, 3d Ed., § 43.34, it is said: "As has been seen, municipal utilities frequently are self-supporting undertakings, which are financed by bonds payable from the plant's revenue only. Inasmuch as it is a legitimate delegation of legislative power to permit municipalities to issue bonds for self-liquidating mu-

nicipal projects, the constitutionality of laws providing for revenue bonds generally is sustained, and such instruments are enforceable if they conform to applicable laws. An essential prerequisite to the practical validity or enforceability of revenue bonds secured by an encumbrance of the revenue of a 'system' is the ownership of the system by the municipal authority issuing the bonds." See also 43 Am. Jur., Public Securities and Obligations, § 285.

"The very purpose of the Revenue Bond Act, General Statutes Ch. 160, Art. 33 [now codified as Art. 34], is to permit municipalities to engage in nongovernmental activities of a public nature by pledging the revenue derived from such undertakings to the payment of bonds issued in connection therewith. Thus it avoids pledging the credit of the municipality to the payment of a debt, for by such arrangements no debt is incurred within the meaning of the Constitution." *Britt v. Wilmington,* 236 N.C. 446, 450, 73 S.E. 2d 289, 292.

G.S. 160-419 provides (1) "Revenue bonds issued under this article shall not be payable from or charged upon any funds other than the revenue pledged to the payment thereof, nor shall the municipality issuing the same be subject to any pecuniary liability thereon"; and (2) that "No holder or holders of any such bonds shall ever have the right to compel any exercise of the taxing power of the municipality to pay any such bonds or the interest thereon; nor to enforce payment thereof against any property of the municipality; nor shall any such bonds constitute a charge, lien, or encumbrance, legal or equitable, upon any property of the municipality"; and (3) "Every bond issued under this article shall contain a statement on its face that 'this bond is not a debt of . . ., but is payable solely from the revenues of the undertaking for which it is issued, as provided by law and the proceedings in accordance therewith, and the holder hereof has no right to compel the levy of any tax for the payment of this bond or the interest to accrue hereon and has no charge, lien, or encumbrance legal or equitable upon any property of said . . .' "

G.S. 160-415 grants to a municipality additional power to that it now has in respect to revenue producing undertakings, and provides in subsection (5) that by an issuance and sale by it of revenue producing bonds "no encumbrance, mortgage, or other pledge of property of the municipality is created thereby," and that "no property of the municipality is liable to be forfeited or taken in payment of said bonds"; and that "no debt on the credit of the municipality is thereby incurred in any manner for any purpose."

G.S. 160-422 provides "The General Assembly hereby declares its intention that the limitations of the amount or percentage of, and the restrictions relating to indebtedness of a municipality and the incurring

thereof contained in the Constitution of the State and in any general, special or local law shall not apply to bonds or interim receipts and the issuance thereof under this article."

Ch. 437, 1963 Session Laws of North Carolina, is entitled:

"AN ACT TO AUTHORIZE THE TOWN OF LAKE LURE TO ISSUE REVENUE BONDS UNDER THE REVENUE BOND ACT OF ONE THOUSAND NINE HUNDRED AND THIRTY-EIGHT TO ACQUIRE THE LAKE, TRUNK SEWERAGE LINE, DAM AND ELECTRIC POWER GENERATING PLANT AND ANCILLARY FACILITIES LOCATED NEAR SAID TOWN, DECLARING SUCH FACILITIES TO BE UNDERTAKINGS WITHIN SAID ACT, GRANTING THE TOWN ALL OF THE POWERS UNDER SAID ACT WITH RESPECT TO SUCH UNDERTAKINGS AND DECLARING ANY SUCH ACQUISITION AND BOND ISSUANCE TO BE FOR PROPER PUBLIC AND MUNICIPAL PURPOSES."

Section 1 of this Act is: "It is hereby determined and declared:

"(a)    That the Town of Lake Lure, a municipal corporation in Rutherford County, is centered around the privately owned lake known as Lake Lure and that the town and surrounding area are primarily resort and recreational in nature.

"(b)    That the very existence of the town depends upon the continued availability of the lake and its advantages to the residents of the town and to those who come to the town as temporary residents for recreational purposes.

"(c)    That many homes are located on the shores of the lake and have docks and boathouses but the deeds to such homes convey no right to use Lake Lure and the docks and boathouses are subject to removal upon the request of the private owner of the lake.

"(d)    That the owner of the lake also owns a trunk sewerage line, dam and electric power generating plant and ancillary facilities, all of the power produced by said plant being sold under a long-term contract to a single utility.

"(e)    That as a practical matter the ownership of the lake, trunk sewerage line, dam and electric power generating plant and ancillary facilities must remain in the same party since the spilling of the lake waters over the dam supplies the power to operate the generating plant.

"(f)    That for many years the private owner of the lake has leased it to the town on a year to year basis but has now indicated a desire to sell the lake, trunk sewerage line, dam and electric power generating plant and ancillary facilities.

"(g)   That the ownership of Lake Lure by any private party having the right to regulate the level of the lake in order to increase the energy output of the generating plant or to operate the lake as a private resort area to the exclusion of the present home owners in the town poses a threat to the continued existence of the town and its orderly growth as a resort area."

Section 2 of this Act authorizes the town of Lake Lure to issue revenue bonds under and pursuant to the provisions of the Revenue Bond Act of 1938 to acquire the property above specifically enumerated, or any one or more thereof.

Section 3 of this Act states these specifically enumerated properties are hereby declared to be, jointly and severally, undertakings within the meaning of the Revenue Bond Act of 1938, and "as to any such undertaking, the Town of Lake Lure shall have all of the powers provided for in said Revenue Bond Act including but without limitation the power to operate said electric power generating plant and sell all of the power produced thereby to a single utility, to lease said plant to any private person, firm or corporation under such terms and conditions and for such period or periods as the governing body of the town shall deem to be in the best interests of the town and to pledge the proceeds of any such lease to the payment of revenue bonds."

Section 4 of this Act states the acquisition by the town of Lake Lure of these specifically enumerated properties and the issuance of revenue bonds therefor "are hereby declared to be proper public and municipal purposes."

Section 5 of this Act states the powers here granted are in addition to and not in substitution for any other powers heretofore or hereafter granted to the town of Lake Lure.

The General Assembly by this Act has declared that the acquisition by the town of Lake Lure of the properties specifically enumerated in the Act and the issuance of revenue bonds therefor "are hereby declared to be proper public and municipal purposes." This legislative declaration is entitled to great weight, but it is not conclusive. Final decision as to whether the acquisition of these properties and the issuance of revenue bonds therefor are for proper public and municipal purposes is for judicial determination. *Dennis v. Raleigh,* 253 N.C. 400, 116 S.E. 2d 923; *Turner v. Reidsville,* 224 N.C. 42, 29 S.E. 2d 211; *Briggs v. Raleigh,* 195 N.C. 223, 141 S.E. 597.

It is clear that the General Assembly has by general enactment of the Revenue Bond Act of 1938 authorized municipalities "to acquire by * * * purchase" (G.S. 160-415(1)) revenue producing properties

of various kinds, including hydroelectric plants or systems or works or properties (G.S. 160-414(5)(b)(3)) and to finance such purchase with funds derived from the sale of revenue bonds, payable solely out of the revenues from the undertaking. The General Assembly by the enactment of Ch. 437, 1963 Session Laws, has authorized the town of Lake Lure "to issue revenue bonds under and pursuant to the provisions of the Revenue Bond Act of 1938" for the purpose of acquiring by purchase the properties specifically enumerated in the Act. In consequence, the provisions of the Revenue Bond Act of 1938 above quoted are an integral part of Ch. 437, 1963 Session Laws of North Carolina. By reason of the provisions of the Revenue Bond Act of 1938 above quoted, and by reason of the specific provisions of Ch. 437, 1963 Session Laws, which make the provisions of the Revenue Bond Act of 1938 apply to the revenue producing bonds which the town of Lake Lure is authorized by Ch. 437, 1963 Session Laws, to issue, compulsory exercise of the taxing power of the town of Lake Lure is specifically withheld as a means of enforcing liability on any covenant or bond of the town of Lake Lure given or issued and sold in connection with the undertaking authorized for the purchase of the properties from Carolina Mountain Power Corporation here, and the Revenue Bond Act of 1938, G.S. 160-419, requires that this shall be stated on the face of each bond issued and sold by the municipality in connection with the undertaking. The resolution to acquire this property adopted by the governing board of the town of Lake Lure is attached to plaintiff's complaint, and made a part thereof. This resolution contains a form of the bonds to be issued by the town of Lake Lure to be designated as Lake Lure Electric Power Facility Revenue Bonds, and on its face contains verbatim the language set forth in G.S. 160-419 stating there is no municipal liability on these bonds. Consequently, by reason of the specific provisions of the Revenue Bond Act of 1938 and by reason of the specific provisions of Ch. 437, 1963 Session Laws, the issuance and sale of such revenue producing bonds by the town of Lake Lure do not constitute a debt of the town of Lake Lure, a pledge of its faith, or a lending of its credit within the meaning of Article VII, section 6 (prior to 1962 this was Article VII, section 7) of the Constitution of North Carolina; and do not give rise to an indebtedness of the town of Lake Lure within the meaning of an organic debt limitation within the meaning of Article V, section 4, of the North Carolina Constitution. *Britt v. Wilmington, supra; McGuinn v. High Point,* 217 N.C. 449, 8 S.E. 2d 462, 128 A.L.R. 608; *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90; Anno. 146 A.L.R. 328. The above quoted provisions of the Revenue Bond Act of 1938 are a substantial affirmation of the decision in *Brock-*

*enbrough v. Board of Water Commissioners,* 134 N.C. 1, 46 S.E. 28; 17 N.C.L.R. 370.

There is no merit to plaintiff's assignment of error that the trial court denied his written request to conclude as a matter of law that since the resolution by the governing body of the town of Lake Lure to issue revenue producing bonds to acquire this property contains no provisions for reserves for extraordinary maintenance or repairs, the resolution exceeds the legislative grant of power to municipal corporations "to the extent that tax revenues shall be expended or pledged for the operation and maintenance of the lake and sewerage facilities violates Article VII, section 6, of the State Constitution, in the absence of approval by the voters," for two reasons: (1) The resolution adopted by the governing board of the town of Lake Lure does not authorize or permit the expenditure or pledging of money derived from taxation by the town in respect to this undertaking, and further the Revenue Bond Act of 1938, under which the revenue producing bonds are authorized by Ch. 437, 1963 Session Laws, provides in G.S. 160-419 that the bonds to be issued and sold in connection with this undertaking by the town of Lake Lure are not a debt of the town of Lake Lure, but are payable solely from the revenues of the undertaking for which they are issued, and the holders thereof have no right to compel the levy of any tax for the payment of these bonds, or any of them, or the interest to accrue thereon on any of them, and have no charge, lien or encumbrance, legal or equitable, upon any property of the town of Lake Lure, and that every bond issued by the town of Lake Lure in connection with the acquisition of this undertaking shall contain a statement on its face to this effect. (2) An examination of the resolution adopted by the governing board of the town of Lake Lure to purchase the properties of Carolina Mountain Power Corporation, which is attached to plaintiff's complaint, and made a part thereof, shows that it contains in sections 408 and 604 provisions to take care of an emergency caused by some extraordinary occurrence from the "Repairs, Equipment, and Replacement Fund," and also provisions for the carrying of insurance in respect to the properties acquired by such acquisition.

A municipal corporation has "the powers prescribed by statute, and those necessarily implied by law, and no other." G.S. 160-1. "But it is also true that a municipal corporation may exercise all the powers within the fair intent and purpose of its creation which are reasonably necessary to give effect to the powers expressly granted, and in doing this it may exercise discretion as to the means to the end." *Riddle v. Ledbetter,* 216 N.C. 491, 5 S.E. 2d 542.

In 2 McQuillin, Municipal Corporations, 3d Ed., § 10.31, it is written: "Any power conferred on a municipality must be exercised for a public

use or purpose as distinguished from a private purpose, unless authorized by the legislature and not forbidden by the constitution of the state. A municipal corporation is a public institution created to promote public, as distinguished from private, objects."

In *Britt v. Wilmington, supra,* the Court said: "A municipal corporation cannot, even with express legislative sanction, engage in any private enterprise or assume any function which is not in a legal sense public in nature, the word 'private' as used in opinions discussing the powers of a municipality being used to designate proprietary, as distinguished from governmental, functions."

What is a public use or purpose has given rise to much judicial determination. The concept of public purpose has considerably expanded since the 19th century. For instance, *Fawcett v. Mt. Airy,* 134 N.C. 125, 45 S.E. 1029 (1903), overruled *Mayo v. Commissioners,* 122 N.C. 5, 29 S.E. 343, and held that an expense incurred by a municipality for the purpose of building and operating plants to furnish water and lights to sell to its inhabitants was a necessary expense, and therefore was for a public purpose. The courts, as a rule, have attempted no precise judicial definition of a public, as distinguished from a private, purpose, but have left each case to be determined by its own peculiar circumstances as from time to time it arises. 2 McQuillen, *ibid,* § 10.31; Rhyne, Municipal Law, p. 343.

In *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803, the Court said: " 'Public Purpose' as we conceive the term to imply, when used in connection with the expenditure of municipal funds from the public treasury, refers to such public purpose within the frame of governmental and proprietary power given to the particular municipality, to be exercised for the benefit, welfare and protection of its inhabitants and others coming within the municipal care. It involves reasonable connection with the convenience and necessity of the particular municipality whose aid is extended in its promotion."

In *Briggs v. Raleigh, supra,* the Court said: "However, the term 'public purpose' is not to be construed too narrowly. [Citing authority.] It is not necessary, in order that a use may be regarded as public, that it should be for the use and benefit of every citizen in the community. It may be for the inhabitants of a restricted locality, but the use and benefit must be in common, and not for particular persons, interests or estates."

The Court said in *Greensboro v. Smith,* 241 N.C. 363, 85 S.E. 2d 292: "The acquisition, establishment and operation of an auditorium, G.S. 160-283, *Adams v. Durham,* 189 N.C. 232, 126 S.E. 611, and of playground and recreation centers, G.S. 160-155 *et seq., Purser v. Ledbetter,* 227 N.C. 1, 40 S.E. 2d 702; *Greensboro v. Smith,* 239 N.C. 138, 79 S.E.

2d 486, are not 'necessary expenses' within the meaning of Art. VII, sec. 7, of the Constitution of North Carolina, for which a municipal corporation may borrow money or levy and collect taxes, without an approving vote of the people, but are public purposes for which a municipal corporation may appropriate available surplus funds not derived from taxes or a pledge of its credit. *Brumley v. Baxter,* 225 N.C. 691, 36 S.E. 2d 281."

In *Dennis v. Raleigh, supra,* the Court held that the expenditure of funds by a municipality for the purpose of advertising to promote the public interest and general welfare of the municipality is for a public purpose for which, under legislative authority, it may without a vote appropriate funds not derived from taxation.

From the unchallenged findings of fact by the trial judge, and from the declarations by the General Assembly in Ch. 437, 1963 Session Laws, it is shown that the town of Lake Lure is a *sui generis* municipality. The judge's findings of fact are to this effect: A privately owned lake known as Lake Lure is situate within its corporate boundaries. The town and surrounding area are primarily resort and recreational in nature. Many houses are located on the shores of the lake with docks and boathouses which are located there by permission of the private owner of the lake, and are subject to removal upon request by the private owner of the lake. The ownership of the lake carries with it the right to regulate the level of the waters of the lake, and it seems by an appreciable lowering of the waters of the lake the docks and boathouses could be left some distance from the waters of the lake, and their use and the recreational use of the houses on the shores of the lake could be gravely impaired, if not destroyed. It is a reasonable inference from the judge's findings of fact that when Lake Lure was created, the town of Lake Lure grew up and developed around it because of its resort and recreational facilities, and that the existence of the town, and the general and economic welfare of all its residents, depends upon the continued and full availability of Lake Lure and its resort and recreational facilities to all the residents of the town and to those who come to the town as temporary residents, whether they own houses there or not, for recreational purposes. The General Assembly in Ch. 437, 1963 Session Laws, has made a declaration substantially to this effect. It is also a reasonable inference from the findings of fact that the ownership of Lake Lure by any private person having the right to regulate and lower the level of the waters of the lake to increase the energy output of the generating plant poses a threat to the continued existence of the town and the general and economic welfare of all its residents, and the General Assembly in Ch. 437, 1963 Session Laws, has made a declaration to this effect: It seems manifest that if

the town is to acquire Lake Lure, it must also acquire the electric generating plant, which uses its waters spilling over the dam to generate hydroelectric power, and honor the contract the private owner of the lake has with Duke Power Company. (William C. Rommel, president of the Carolina Mountain Power Corporation, testified: "Carolina Mountain Power Corporation would not consent or consider to selling any one of the facilities separate. They would sell all or nothing.") *Salus populi suprema lex est* was a maxim with the Roman people, and is a maxim with all nations. Surely, the acquisition of properties by revenue bond financing to preserve the very existence of the town of Lake Lure is a proper municipal public purpose. It seems clear that the acquisition of these properties by the town of Lake Lure by the issuance of revenue producing bonds will be essentially public and primarily for the general good of all the inhabitants of the town of Lake Lure, and in line with the recreational development of the town as a resort area, though there may be incidental benefit to private individuals, but incidental benefit to private individuals would not in itself prevent a determination that the acquisition of this property is for a public purpose and a proper municipal purpose. Rhyne, Municipal Law, p. 344; 2 McQuillen, Municipal Corporations, 3d Ed., p. 648; 64 C.J.S., Municipal Corporations, p. 334; *State v. Cotney*, 104 So. 2d 346 (Fla. 1958); *Courtesy Sandwich Shop v. Port of New York Auth.*, 12 N.Y. 2d 379, 240 N.Y.S. 2d 1, 190 N.E. 2d 402. It is plain that the acquisition of this property by the town of Lake Lure and the payment for it by the use of revenue producing bonds (no tax money being used) is not a violation of section 1 (the equality and rights of persons), and not a violation of section 17 of Article I of the North Carolina Constitution. The General Assembly has declared, and the trial court has found and concluded, that the acquisition of the above specified properties and the payment therefor by the issuance of revenue producing bonds are for a proper public and proper municipal purpose, and we agree. The trial court properly denied plaintiff's request to conclude as a matter of law that the acquisition of these specified properties by the town was not a proper public and proper municipal purpose, but primarily for the benefit of private interests in violation of sections 1 and 17 of Article I of the State Constitution. We also agree with the trial judge's conclusions of law.

*Williamson v. High Point, supra,* is distinguishable, *inter alia,* in that High Point was proposing to issue and sell revenue producing bonds for the purpose of constructing a municipal power plant to be located outside of its corporate limits, with transmission lines running through three counties, that would generate more than three times the amount of electricity then used by the entire city, and that the purpose of the

project was to engage in the power business generally and to sell electricity to municipalities, industries, and individuals generally.

G.S. 160-421 provides that all revenue bonds issued pursuant to the Revenue Bond Act of 1938 shall be approved and sold by the Local Government Commission. This statute also provides "no municipality shall construct any systems, plants, works, instrumentalities, and properties used or useful in connection with the generation, production, transmission, and distribution of * * * electric energy for lighting, heating, and power for public and private usage without having first obtained a certificate of convenience and necessity from the North Carolina Utilities Commission." Without deciding whether this provision has any application here, the record, but not the findings of fact, shows that the town of Lake Lure, under the provisions of G.S. 160-421, brought a proceeding before the North Carolina Utilities Commission to obtain from it a certificate of public convenience and necessity authorizing the town of Lake Lure to acquire from Carolina Mountain Power Corporation its properties above specifically enumerated, by the issuance of revenue producing bonds, and to operate them. The Utilities Commission, after a public hearing, made exhaustive findings of fact on 21 July 1964 and issued to the town of Lake Lure a certificate of public convenience and necessity as requested by the town.

It is to be emphasized that here we are concerned with the acquisition of properties by purchase by the town of Lake Lure by the issuance of revenue producing bonds, and not in any aspect with funds derived or to be derived from taxation. All of plaintiff's assignments of error are overruled. The unchallenged findings of fact by the trial judge, and the declarations by the General Assembly in Ch. 437, 1963 Session Laws of North Carolina, support the judge's conclusions of law, and they in turn support his judgment declining to issue a permanent injunction as requested by plaintiff and taxing him with the costs. The judgment below is

Affirmed.