MADISON CABLEVISION, INC. v. CITY OF MORGANTON, NORTH CAROLINA

No. 624PA87

(Filed 7 December 1989)

1. **Taxation § 7 (NCI3d)— public purpose—determination by Supreme Court**

   While a legislative determination that an activity or enterprise is for a public purpose is entitled to great weight, the ultimate responsibility for the public purpose determination rests with the Supreme Court.

   **Am Jur 2d, State and Local Taxation §§ 56-58.**

2. **Taxation § 7.1 (NCI3d)— public purpose test**

   In order for a particular undertaking by a municipality to be for a public purpose, (1) it must involve a reasonable connection with the convenience and necessity of the particular municipality; and (2) it must benefit the public generally as opposed to special interests or persons. The inability or unwillingness of private enterprise to provide the challenged service is not part of the public purpose test.

   **Am Jur 2d, State and Local Taxation §§ 42, 44, 47.**

3. **Municipal Corporations § 23 (NCI3d); Taxation § 7.2 (NCI3d)— cable television system—ownership and operation by city— public purpose**

   Provisions of G.S. chapter 160A, article 16, part 1 which authorize cities to finance, acquire, construct, own, and operate a cable television system do not violate the "public purpose" clause of Art. V, § 2(1) of the N. C. Constitution.

   **Am Jur 2d, Telecommunications § 2.**

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

4. **Constitutional Law § 19 (NCI3d); Monopolies § 2 (NCI3d); Municipal Corporations § 23 (NCI3d) — cable television system — ownership and operation by city — no unconstitutional monopoly**

A city's decision to establish a municipal cable television system and to decline to grant cable television franchises to other applicants does not establish a monopoly in violation of Art. I, § 34 of the N. C. Constitution.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 472; Telecommunications § 11.**

5. **Constitutional Law § 19 (NCI3d); Municipal Corporations § 23 (NCI3d) — cable television system — ownership and operation by city — no exclusive emolument**

A city's decision to establish a municipal cable television system and to decline to grant cable television franchises to other applicants does not violate the exclusive emoluments clause of Art. I, § 32 of the N. C. Constitution because (1) the prohibition of this section contemplates a grant by "the community" to others, and a city needs no grant from itself to exercise legislatively authorized powers to operate a public enterprise, and (2) a municipal corporation by definition falls within the exception for corporations providing "public services" and thus cannot violate the provisions of Art. I, § 32.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 472; Telecommunications § 11.**

6. **Municipal Corporations § 23 (NCI3d); Unfair Competition § 1 (NCI3d) — cable television system — ownership and operation by city — no unfair trade practice**

Municipal ownership and operation of a cable television system do not violate the antimonopoly or unfair trade practices provisions of G.S. chapter 75 since the powers conferred upon cities by the North Carolina General Statutes with respect to the provision and franchising of cable television service clearly contemplate that competition may be displaced with respect to this service, and the antitrust provisions of chapter 75 will not be applied to municipalities performing functions delegated to them by the legislature.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 472; Telecommunications § 11.**

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

ON discretionary review pursuant to N.C.G.S. § 7A-31 prior to a determination by the Court of Appeals of a judgment entered on 6 July 1987 by *Gaines, J.*, in the Superior Court, BURKE County, granting summary judgment for the defendant, City of Morganton. Heard in the Supreme Court 11 May 1988.

*Tharrington, Smith & Hargrove, by Wade H. Hargrove, Randall M. Roden, and Michael Crowell, for plaintiff-appellant.*

*Mitchell, Blackwell, Mitchell & Smith, P.A., by Thomas G. Smith; Settlemyer & Hodges, by Steve B. Settlemyer; and Spiegel & McDiarmid, by Joseph Van Eaton and Barbara S. Esbin, for defendant-appellant.*

*North Carolina League of Municipalities, by S. Ellis Hankins, General Counsel, amicus curiae.*

*Adams, McCullough & Beard, by Hugh Stevens, for the North Carolina Press Association, the North Carolina Association of Broadcasters, and the North Carolina CATV Association, amici curiae.*

MEYER, Justice.

The posture of this case is somewhat unusual in that the issues presented on appeal to this Court are intermeshed with other issues yet to be decided in an action pending in the United States District Court for the Western District of North Carolina. We thus discuss the posture of the case at some length. The only issues presented to this Court for decision in this case are as follows: (1) whether the provisions of chapter 160A, article 16, part 1 of the North Carolina General Statutes which authorize cities to finance, acquire, construct, own, and operate a cable television system violate the "public purpose clause" of the North Carolina Constitution, article V, section 2(1); and (2) whether the City of Morganton's refusal to grant cable television franchises to private applicants, including the plaintiff, and its decision to build and operate a municipal cable system violate the exclusive emoluments and monopoly clauses of the North Carolina Constitution, article I, sections 32 and 34, or the antimonopoly and unfair trade practices provisions of chapter 75 of the North Carolina General Statutes. We answer both issues in the negative and affirm the entry of summary judgment for the defendant City.

Madison Cablevision, Inc. (hereinafter "Madison Cable"), is a privately owned company currently providing cable television serv-

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

ice in the City of Morganton pursuant to a twenty-year franchise which expired in October 1986 and which the City has not renewed. Madison Cable continues to provide service pending the outcome of litigation. Madison Cable initially filed an action in the United States District Court for the Western District of North Carolina asserting twelve claims for relief from the actions of the City in refusing to renew Madison Cable's expired franchise or to grant a franchise to any private company, including the plaintiff, and in planning the establishment of a municipally owned and operated cable television system. While the record on appeal before this Court does not contain a copy of the complaint filed in the United States District Court, we learn from an abstention Memorandum and Order entered in that case by United States District Court Judge Woodrow W. Jones on 3 July 1986 that the twelve claims asserted in the federal action sought relief under both federal and state law. The first claim for relief is for a declaratory judgment that Madison Cable's request for franchise renewal is governed by the Cable Communications Policy Act of 1984 (hereinafter "Cable Act"), 47 U.S.C.A. § 546 (West 1984), which provides procedures to be followed by cities for renewal of cable franchises and further provides that denial of an application for renewal shall be made upon adverse findings with respect to certain enumerated factors. The second claim for relief is for judicial review of the City's decision not to renew Madison Cable's franchise pursuant to the Cable Act, 47 U.S.C.A. §§ 546, 555 (West 1984). In its third claim for relief, Madison Cable alleges that rights of freedom of the press and speech guaranteed to it by the United States Constitution and the North Carolina Constitution have been violated. In its fourth claim for relief, Madison Cable alleges a violation of the equal protection clause of the fourteenth amendment to the United States Constitution. Its fifth claim for relief alleges confiscation of property without due process of law in violation of the fifth and fourteenth amendments to the United States Constitution. The sixth and seventh claims for relief allege, respectively, attempted monopolization in violation of section 2 of the Sherman Act, 15 U.S.C.A. § 2 (West 1974), and violation of article I, sections 32 and 34 of the North Carolina Constitution and the monopoly and antitrust laws of North Carolina, N.C.G.S. ch. 75 (1985). The eighth claim for relief alleges deprivation of Madison Cable's constitutional rights in violation of the Civil Rights Act, 42 U.S.C.A. § 1983 (West 1979). In its ninth and tenth claims for relief, Madison Cable alleges common law claims of interference with contractual rela-

tions and breach of contract. The eleventh claim for relief alleges violation of the public purpose requirement of the North Carolina Constitution, article V, section 2(1). In its twelfth claim for relief, Madison Cable alleges that the City's option to purchase the franchisee's cable system at the expiration of the franchise is an unconstitutional, and therefore unenforceable, provision of the franchise agreement.

Defendant City of Morganton (hereinafter "City") filed an answer and a motion for summary judgment. Following submission of briefs and oral argument, United States District Court Judge Woodrow Jones dismissed the first two claims relating to the franchise renewal provisions of the federal Cable Act on the basis that the Act was not applicable because of the effective date of the Act and ruled that he should retain jurisdiction but abstain from deciding Madison Cable's federal claims pending submission of certain nonfederal claims to the courts of the State of North Carolina. Plaintiff was ordered to file its complaint in state court forthwith.

Pursuant to and consistent with Judge Jones' abstention order, Madison Cable filed a complaint in the Superior Court of Burke County, invoking in its prayer for relief only the public purpose and antimonopoly provisions of the North Carolina Constitution and the unfair trade practices provisions of chapter 75 of the North Carolina General Statutes. The City filed its answer to the complaint and also filed a motion for summary judgment as to both claims. Madison Cable filed an "Opposition" with supporting affidavits and its own motion for summary judgment. After arguments on the motions, Judge Gaines ultimately denied plaintiff's motion for summary judgment and granted summary judgment for the defendant City. Plaintiff appealed that order to the Court of Appeals, and this Court allowed defendant's bypass motion on 18 December 1987.

With that statement of the posture of the case, we now move to a statement of the facts on which the issues are to be determined.

As is the case in numerous other North Carolina cities, community antenna television (CATV) service has been provided in the City of Morganton pursuant to a nonexclusive, limited term franchise, subject to a number of public service requirements. The franchise granted Madison Cable the right for a period of twenty years to place wires and appurtenances in the public rights-of-way, but also required Madison Cable, upon termination of the franchise,

to remove its facilities and restore public places to their original condition. The franchise agreement did not give Madison Cable any right to renewal and gave the City an option to purchase the system at the end of the franchise term. The franchise expired in October 1986, but service continues pending the outcome of litigation. Subscribers to plaintiff's service pay a monthly fee based on the level of service selected. A choice of twenty-seven different channels of television programming are presently offered, including the three broadcast networks; independent television stations; news, sports, movie, informational, and entertainment channels, including some pay channels; and commercial advertising services. No studio or cable channel is provided for public origination of local television programming. Such service was available during the early period of the franchise but was discontinued because it was not used by the public.

Because of the approaching 1986 termination date of the twenty-year franchise and because the franchise provided no right of renewal and contained no provisions regarding procedures for renewal, the City in late 1983 began to gather information and develop procedures for the purpose of making a rational decision as to the future of cable television in Morganton. In December 1983, Madison Cable submitted a proposal to the City for renewal of its franchise. The proposal was denied. The City engaged the services of an independent consulting firm and a Washington, D.C., law firm to assist it in its studies. The consulting firm made three studies relating to (1) an analysis of comparable cable system offerings, (2) local communication needs, and (3) the feasibility of a municipal cable system. These studies, which were made available for public inspection, concluded in effect that the cable system then existing in the city was inadequate, that the city needed a modern cable communications system, and that a city-owned and operated system was feasible.

After reviewing the studies, the City of Morganton, on 24 September 1984, issued a request for information ("RFI") to the general public and provided copies to three private cable companies—Madison Cable, Burke Cable Company, Ltd. ("Burke"), and Catawba Valley Cable TV ("Catawba")—which had expressed an interest in providing cable service to the City. The RFI stated that a public hearing would be held on 14 November 1984 for the purposes of:

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

(a) determining whether the franchise then held by Madison should be renewed;

(b) determining whether other private cable companies were interested in and capable of providing cable service in Morganton;

(c) determining whether Morganton should establish a municipal cable system;

(d) determining whether there was any interest in an over-build of the cable system then existing in the City; and

(e) determining whether more than one cable system in the City was practical.

The RFI invited comments on the local communication needs study and the feasibility of a municipal system study. Additionally, each responding cable company was invited to submit a proposal describing the cable system it proposed for the City and why such system proposed would be appropriate for Morganton. Madison Cable, Burke, and Catawba all responded to the RFI on 26 October 1984. The public hearing was held as scheduled on 14 November 1984. At the hearing, the cable companies and the public were given an opportunity to present evidence and question the City's consultants. City employees, the president of Rice Associates, and the manager of a municipally owned cable system in Shrewsbury, Massachusetts, also spoke at the hearing. The cable companies were given an opportunity to submit additional evidence after the close of the hearing to respond to issues raised at the hearing and to raise any additional questions.

Madison Cable participated actively in the proceedings. In addition to its response to the RFI, Madison Cable presented prepared statements at the hearing, asked questions of City witnesses, and also provided additional information for the record after the hearing.

Based on the over 1,200-page record developed in this matter, the City Council adopted an ordinance (number 85-58, entitled "The Cable Ordinance of 1985") on 9 September 1985, declining to renew Madison Cable's franchise. The City Council concluded that:

1. [Madison's] franchise should not be renewed. Within 90 days of this Order [Madison] should submit a plan for orderly removal of its equipment from City poles at the end of the franchise term.

2. Burke and Catawba will not at this time be granted franchises for the City of Morganton.

3. The City Staff should begin the steps necessary to enable the City to establish a municipal system.

Should any operator desire to seek a franchise in the future, the Council does not foreclose that possibility. The Council will itself review the overbuild situation again in five years. However, the Council finds that there is little reason to further pursue private ownership options in Morganton at this time.

The Cable Ordinance of 1985 (number 85-58) incorporated a nineteen-page "Opinion of the City Council of Morganton Regarding Cable Television" with its accompanying sixty-six-page appendix. The opinion provides the detailed bases for each of the conclusions reached in Ordinance 85-58 referred to above.

It was as a result of Ordinance 85-58 that Madison Cable brought the action in the United States District Court which resulted in Judge Jones' Memorandum and Order of 3 July 1986 staying the proceedings in that court pending resolution of these state court proceedings.

We note at the outset that apparently among Madison Cable's claims for relief in the action in the United States District Court there was an allegation that rights guaranteed to Madison Cable by the Constitution of North Carolina, article I, section 14, were violated. That section of the state Constitution provides: "Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse."

As previously noted, the record on appeal does not contain a copy of the complaint filed in the federal suit. Judge Jones' abstention Memorandum and Order dated 3 July 1986 does, however, reflect that "[i]n its third claim for relief Madison alleges violation of rights guaranteed by . . . Article I, Section 14 of the North Carolina Constitution." Whether Judge Jones intended that Madison Cable should attempt to resolve that issue in this state court action is unclear. The City of Morganton contends with substantial persuasion that Judge Jones retained this state issue raised in the federal complaint. Madison Cable, in paragraph 12 of its complaint in this state action, refers to its existing cable television system as "a

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

medium of expression entitled to the rights and protections of
. . . Article I, Section 14 of the North Carolina Constitution" but
does not allege in any manner that any such "rights and protec-
tions" under this section were violated. In its prayer for relief,
Madison Cable does not refer to that section of our Constitution
but simply asks the Court to adjudge and declare Morganton's
actions to be a violation of the "public purpose," the antimonopoly,
and the "exclusive emoluments and privileges" provisions of our
state Constitution as well as the unfair trade practices provisions
of our General Statutes and further to enjoin Morganton from
operating a municipal cable system and from excluding Madison
Cable from providing cable service in Morganton. Not only is a
violation of article I, section 14 not specifically alleged, it is not
presented or argued as a separate issue in Madison Cable's brief.
Nor is it addressed in appellee's brief. Plaintiff's brief is devoted
to presenting the public purpose, exclusive emoluments, and monopo-
ly constitutional issues and the unfair trade practices statutory
issue. While Madison Cable does repeatedly refer in its brief before
this Court to article I, section 14, in its arguments concerning
the public purpose and monopoly issues, this does not present the
issue of what rights, if any, plaintiff has under that section of
our Constitution or whether any such rights were violated. Rule
28 of our Rules of Appellate Procedure requires that the brief
"define clearly the questions presented to the reviewing court"
and states that "[r]eview is limited to questions so presented."
N.C.R. App. P. 28(a). No analysis of our state Constitution's
guarantees of free expression is necessary to a determination of
the issues presented on this appeal, that is, whether the establish-
ment of a municipally operated cable television system violates
the public purpose clause or the exclusive emoluments and privileges
clause of our state Constitution or our statutes prohibiting unfair
trade practices. Because a violation of article I, section 14 is not
specifically alleged or separately briefed by the litigants, we do
not address the question.

In determining whether the trial judge erred in granting sum-
mary judgment in favor of the City of Morganton, we address
the two issues brought forward on this appeal. As previously noted,
they are: (1) whether the provisions of chapter 160A, article 16,
part 1 of the North Carolina General Statutes which authorize
cities to finance, acquire, construct, own, and operate a cable televi-
sion system violate the "public purpose" clause of the North Carolina

Constitution, article V, section 2(1); and (2) whether the City of Morganton's refusal to grant cable television franchises to private applicants, including Madison Cable, violates the exclusive emoluments and monopoly clauses of the North Carolina Constitution, article I, sections 32 and 34, or the antimonopoly and unfair trade practices provisions of North Carolina General Statutes chapter 75. We answer both issues in the negative and affirm the entry of summary judgment for the defendant City.

I.

Madison Cable contends first that the statutes allowing cities to own and operate cable television systems violate the public purpose provisions of our state Constitution. We disagree.

Article V, section 2(1) of our state Constitution provides: "The power of taxation shall be exercised in a just and equitable manner, for public purposes only, and shall never be surrendered, suspended, or contracted away." Although the constitutional language speaks of the "power of taxation," the limitation has not been confined to government use of tax revenues. *In re Housing Bonds*, 307 N.C. 52, 296 S.E.2d 281 (1982) (revenue bonds to finance housing for persons of moderate income); *Stanley, Edwards, Henderson v. Dept. Conservation & Development*, 284 N.C. 15, 199 S.E.2d 641 (1973) (revenue bonds for pollution abatement and industrial facilities); *Foster v. Medical Care Comm.*, 283 N.C. 110, 195 S.E.2d 517 (1973) (revenue bonds to finance construction of private hospital facilities); *Martin v. Housing Corp.*, 277 N.C. 29, 175 S.E.2d 665 (1970) (revenue bonds for low-income housing); *Mitchell v. Financing Authority*, 273 N.C. 137, 159 S.E.2d 745 (1968) (revenue bonds for industrial development); *Nash v. Town of Tarboro*, 227 N.C. 283, 42 S.E.2d 209 (1947) (general obligation bonds for the construction of a hotel).

Although the Morganton City Council has not determined how the proposed city cable system will be financed, we assume it will be, in part at least, by the expenditure of public funds. The parties have briefed and argued the case, and we thus decide it, based on the assumption that funds that are subject to the constitutional restriction of article V, section 2(1) will be spent on the system.

The General Assembly of North Carolina has explicitly authorized cities to establish, own, and operate cable television systems. In N.C.G.S. § 160A-311, the General Assembly defines "public enterprise" as including, among numerous other enterprises, "[c]able

television systems." N.C.G.S. § 160A-312 then provides, in pertinent part, as follows:

> A city shall have authority to acquire, construct, establish, enlarge, improve, maintain, own, operate, and contract for the operation of any or all of the public enterprises as defined in this Article to furnish services to the city and its citizens. Subject to Part 2 of this Article [restrictions relating solely to municipally owned and operated electrical systems], a city may acquire, construct, establish, enlarge, improve, maintain, own, and operate any public enterprise outside its corporate limits, within reasonable limitations, but in no case shall a city be held liable for damages to those outside the corporate limits for failure to furnish any public enterprise service.

N.C.G.S. § 160A-312 para. 1 (1979).

N.C.G.S. § 160A-313, governing the financing of public enterprises, provides:

> Subject to the restrictions, limitations, procedures, and regulations otherwise provided by law, a city shall have full authority to finance the cost of any public enterprise by levying taxes, borrowing money, and appropriating any other revenues therefor, and by accepting and administering gifts and grants from any source on behalf thereof.

N.C.G.S. § 160A-313 (1971).

With regard to the authority of cities to grant franchises for the operation of a cable television system and to protect both municipally operated and franchised systems, N.C.G.S. § 160A-319 provides, in pertinent part:

> A city shall have authority to grant upon reasonable terms franchises for the operation within the city of any of the enterprises listed in G.S. 160A-311 . . . . [C]able television franchises shall not be granted for a period of more than 20 years. Except as otherwise provided by law, when a city operates an enterprise, or upon granting a franchise, a city may by ordinance make it unlawful to operate an enterprise without a franchise.

N.C.G.S. § 160A-319 para. 1 (1975).

[1] The initial responsibility for determining what is and what is not a public purpose rests with the legislature; its determinations

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

are entitled to great weight. *In re Housing Bonds*, 307 N.C. 52, 296 S.E.2d 281 (1982); *Dennis v. City of Raleigh*, 253 N.C. 400, 116 S.E.2d 923 (1960). While the ultimate responsibility for the public purpose determination rests, of course, with this Court, the guiding principles for the Court's review once the legislature has made a public purpose determination are set forth in *In re Housing Bonds*:

> The presumption is in favor of the constitutionality of an act. All doubts must be resolved in favor of the Act. The Constitution is a restriction of powers and those powers not surrendered are reserved to the people to be exercised through their representatives in the General Assembly; therefore, so long as an act is not forbidden, the wisdom and expediency of the enactment is a legislative, not a judicial, decision.

307 N.C. 52, 57, 296 S.E.2d 281, 284 (citations omitted).

The adoption of these statutes by the General Assembly leaves no doubt whatever that our legislature has determined that the establishment, ownership, and operation of a cable television system by a city is a public purpose within the meaning of article V, section 2(1) of the North Carolina Constitution. Where the declaration of our legislature is clear, as here, we accord that determination great weight. However, although we accord it great weight, it is not conclusive. It is the duty and prerogative of this Court to make the ultimate determination of whether the activity or enterprise is for a purpose forbidden by the Constitution of the state. *Foster v. Medical Care Comm.*, 283 N.C. 110, 195 S.E.2d 517 (1973).

This Court has addressed the question of what constitutes a public purpose on many occasions and has expressed itself on the subject in various ways. "Our reports contain extensive philosophizing . . . on the subject." *Stanley, Edwards, Henderson v. Dept. Conservation & Development*, 284 N.C. 15, 33, 199 S.E.2d 641, 653. The results of these endeavors is perhaps best summarized in a 1970 opinion of this Court by Bobbitt, C.J.:

> "A slide-rule definition to determine public purpose for all time cannot be formulated; the concept expands with the population, economy, scientific knowledge, and changing conditions. As people are brought closer together in congested areas, the public welfare requires governmental operation of facilities

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

which were once considered exclusively private enterprises, and necessitates the expenditure of tax funds for purposes which, in an earlier day, were not classified as public. Often public and private interests are so co-mingled that it is difficult to determine which predominates. It is clear, however, that for a use to be public its benefits must be in common and not for particular persons, interests, or estates; the ultimate net gain or advantage must be the public's as contradistinguished from that of an individual or private entity."

*Martin v. Housing Corp.*, 277 N.C. 29, 43, 175 S.E.2d 665, 672-73 (1970) (citations omitted) (quoting *Mitchell v. Financing Authority*, 273 N.C. 137, 144, 159 S.E.2d 745, 750 (1968)).

[2] This Court has not specifically defined "public purpose" but rather has expressly declined to "confine public purpose by judicial definition[, leaving] 'each case to be determined by its own peculiar circumstances as from time to time it arises.' " *Stanley, Edwards, Henderson v. Dept. Conservation & Development*, 284 N.C. at 33, 199 S.E.2d at 653 (quoting *Keeter v. Town of Lake Lure*, 264 N.C. 252, 264, 141 S.E.2d 634, 643 (1965)). Two guiding principles have been established for determining that a particular undertaking by a municipality is for a public purpose: (1) it involves a reasonable connection with the convenience and necessity of the particular municipality, *Airport Authority v. Johnson*, 226 N.C. 1, 36 S.E.2d 803 (1946); and (2) the activity benefits the public generally, as opposed to special interests or persons, *Martin v. Housing Corp.*, 277 N.C. 29, 175 S.E.2d 665. This has been our traditional test, and we continue to adhere to it.

The term "public purpose" is not to be narrowly construed. *Briggs v. City of Raleigh*, 195 N.C. 223, 141 S.E. 597 (1928). It is not necessary that a particular use benefit every citizen in the community to be labeled a public purpose. *Id.* Madison Cable contends that a careful reading of this Court's "public purpose" decisions suggests that the test of whether an enterprise or activity constitutes a "public purpose" is a three-part inquiry: (1) Is the activity one traditionally performed by the government? (2) Is there a public need for the activity? and (3) Is private enterprise unwilling or unable to engage in the activity? Plaintiff contends that unless all three questions can be answered in the affirmative, the activity or enterprise does not constitute a public purpose. The wording Madison Cable uses to formulate its suggested test is taken in

**MADISON CABLEVISION v. CITY OF MORGANTON**

[325 N.C. 634 (1989)]

part from *Stanley, Edwards, Henderson v. Dept. Conservation & Development*, 284 N.C. 15, 199 S.E.2d 641, where the Court said: "It is only when private enterprise has demonstrated its inability or unwillingness to meet a public necessity that government is permitted to invade the private sector." *Id.* at 33, 199 S.E.2d at 653. It is clear that the language was not meant to establish a new and different test. As demonstrated herein, if the ability and willingness of the private sector to provide the challenged service were taken as the test in every case, many if not most of the traditional services provided by municipal government under the public purpose doctrine would now be subject to challenge on constitutional grounds. Today, territorial disputes between municipally owned electric utilities and investor-owned public utilities over service to city residents are not uncommon. Despite the fact that privately owned utilities stand ready and willing to serve municipal residents, no one would seriously argue that this fact alone renders the provision of electric utility service a private, rather than public, purpose. The same holds true for public hospitals, waste disposal, and other similar services.

Moreover, as further demonstrated herein, prior and subsequent to *Stanley*, this Court issued numerous opinions determining the public purpose issue by applying the traditional test. The language in *Stanley* quoted above itself stands without direct citation to previous Supreme Court decisions. The discussion following it pertains to two earlier cases involving revenue bonds issued by public housing authorities in which *a factor* in the public purpose analysis was the unwillingness or inability of the private sector to provide the level of housing services which the legislature had determined to be necessary in the public interest. In the same paragraph, the *Stanley* Court itself discussed *other* important and traditional factors in the determination of public purposes, such as the need for the benefits to pass directly to the public and not to a private intermediary.

The outcome in *Stanley*—and the language so heavily relied on by Madison Cable—clearly turns on the fact that the legislative enactment in question was "[p]atently . . . designed to enable industrial polluters to finance, at the lowest interest rate obtainable, the pollution abatement and control facilities which the law is belatedly requiring of them." *Id.* at 32, 199 S.E.2d at 653. This Court repeatedly stated that the proposed financing violated the public purpose clause because it involved "[d]irect assistance to a private

entity," conveyance of public power to a private agency, and aid to "particular business ventures." *Id.* Thus, the result in *Stanley* ultimately follows from the application of the traditional public purpose test that the ultimate gain to be derived from the governmental undertaking accrues directly to the general public as opposed to a private entity, rather than from the novel "test" proposed by Madison Cable that the private sector must be shown to be unable or unwilling to provide the service. The language in *Stanley* relied upon by Madison Cable is an aberration and must be considered dictum which did not create a rule of decision for future cases.

Later cases from both this Court and the Court of Appeals do not state the test for public purpose in the language of *Stanley* but continue to rely upon and apply the traditional test as stated in, for example, the cases of *Mitchell v. Financing Authority*, 273 N.C. 137, 159 S.E.2d 745 (1968), and *Martin v. Housing Corp.*, 277 N.C. 29, 175 S.E.2d 665. *See, e.g., In re Housing Bonds*, 307 N.C. 52, 296 S.E.2d 281 (1982); *North Carolina ex rel. Horne v. Chafin*, 62 N.C. App. 95, 302 S.E.2d 281, *aff'd per curiam*, 309 N.C. 813, 309 S.E.2d 239 (1983), *appeal dismissed*, 466 U.S. 933, 80 L. Ed. 2d 452 (1984).

The rule suggested by Madison Cable would call into question the authority of municipalities to construct, own, operate, maintain, and finance water systems, sewer systems, solid waste collection facilities, public transportation systems, electric systems, gas storage and distribution systems, as well as cable television systems, all of which are authorized by General Statutes chapter 160A, article 16, part 1, and could endanger billions of dollars in outstanding bond issues. It would likewise call into question the authority of municipalities and other local governments to contract for and to regulate such enterprises. All of these enterprises can be and are provided by private companies. If indeed the municipal operation of these enterprises was, as Madison Cable contends, violative of the public purpose provision of the North Carolina Constitution unless private enterprise is "unwilling and unable" to engage in such enterprises, the private bus companies, the private waste disposal companies, the private water companies, the private telephone companies, the private parking companies, etc., could force the municipal systems to shut down by offering to provide the service. We reject this contention and will continue to apply our traditional test.

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

The argument that local governments may not operate enterprises unless it can be shown that private enterprise is "unwilling or unable" to engage in the proposed activity is essentially a contention that the municipal operations of the enterprise would create an unfair competition. In the case at bar, plaintiff's counsel urged upon oral argument that this Court "should not allow a municipality to compete" with the plaintiff. This Court long ago rejected this argument. Municipally owned and operated enterprises have been permitted to engage in head-to-head competition with privately owned companies. *Power Co. v. Elizabeth City*, 188 N.C. 278, 124 S.E. 611 (1924) (a private company could not restrain a city from establishing a water system on the ground that establishment of a municipal system "would create an unfair competition" even though the private company claimed the competition would destroy its business). *See also Durham v. State of North Carolina*, 395 F.2d 58 (4th Cir. 1968). Similar results were reached consistently in early cases from other states. *City and County of Denver v. New York Trust Co.*, 229 U.S. 123, 57 L. Ed. 1101 (1913) (Colorado); *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 48 L. Ed. 795 (1904) (Massachusetts); *Skaneateles Water Co. v. Skaneateles*, 184 U.S. 354, 46 L. Ed. 585 (1902) (New York).

Many of the activities which this Court has determined to meet our traditional "public purpose" test clearly do compete with private businesses furnishing the same service. While many of the cases decided by this Court fall into broad categories such as public transportation; hospitals; electric, gas, and telephone utilities; public housing; urban renewal; recreation; and education, the cases demonstrate the great variety of facilities and activities which have been determined to be "public purposes." **Aid to Railroad:** *Wood v. Town of Oxford*, 97 N.C. 227, 2 S.E. 653 (1887); **Airport Facilities:** *Airport Authority v. Johnson*, 226 N.C. 1, 36 S.E.2d 803 (1946) (regional airport); *Turner v. City of Reidsville*, 224 N.C. 42, 29 S.E.2d 211 (1944) (municipal airport); *Goswick v. City of Durham*, 211 N.C. 687, 191 S.E. 728 (1937) (municipal airport); **Railway Terminal Facilities:** *Hudson v. City of Greensboro*, 185 N.C. 502, 117 S.E. 629 (1923); **Port Terminal Facilities:** *Webb v. Port Commission*, 205 N.C. 663, 172 S.E. 377 (1934); **Grain Handling Facility Financed by Revenue Bonds and to be Leased to a Private Concern:** *Ports Authority v. Trust Co.*, 242 N.C. 416, 88 S.E.2d 109 (1955); **Public Housing Authority Under Federal Housing Acts:** *Mallard v. Hous-*

*ing Authority*, 221 N.C. 334, 20 S.E.2d 281 (1942); **North Carolina Housing Corporation, Low Income Housing:** *Martin v. Housing Corp.*, 277 N.C. 29, 175 S.E.2d 665 (1970); **Moderate Income Housing:** *In re Housing Bonds*, 307 N.C. 52, 296 S.E.2d 281 (1982); **Urban Renewal Project:** *Horton v. Redevelopment Commission*, 262 N.C. 306, 137 S.E.2d 115 (1964); **Municipal Hospital:** *Rex Hospital v. Comrs. of Wake*, 239 N.C. 312, 79 S.E.2d 892 (1954); *Burleson v. Board of Aldermen*, 200 N.C. 30, 156 S.E. 241 (1930); **Public Park:** *Purser v. Ledbetter*, 227 N.C. 1, 40 S.E.2d 702 (1946) (public parks, playgrounds, and recreational facilities are not a necessary expense, although a public purpose, *Atkins v. City of Durham*, 210 N.C. 295, 186 S.E. 330 (1936), will not "be followed as a precedent"); *Twining v. City of Wilmington*, 214 N.C. 655, 200 S.E. 416 (1939) (parks and playgrounds were not a necessary expense for Wilmington, although they were a public purpose); *Yarborough v. Park Commission*, 196 N.C. 284, 145 S.E. 563 (1928) (playgrounds and parks were "necessary expenses" within constitutional limitation on pledging credit without a vote of the people); **Purchase of a Lake and a Generating Plant:** *Keeter v. Town of Lake Lure*, 264 N.C. 252, 141 S.E.2d 634 (1965); **Public Auditorium:** *Adams v. City of Durham*, 189 N.C. 232, 126 S.E. 611 (1925); **State Fair:** *Briggs v. City of Raleigh*, 195 N.C. 223, 141 S.E. 597 (1928); **Public Library:** *Jamison v. City of Charlotte*, 239 N.C. 682, 80 S.E.2d 904 (1954); **Public Schools:** *Collie v. Commissioners*, 145 N.C. 170, 59 S.E. 44 (1907); **Aid to Establish a Teachers Training School:** *Cox v. Commissioners*, 146 N.C. 584, 60 S.E. 516 (1908); **Education Generally:** *Education Assistance Authority v. Bank*, 276 N.C. 576, 174 S.E.2d 551 (1970) (a state revenue bond issue for loans to residents of slender means to facilitate their post-secondary education); *Green v. Kitchin*, 229 N.C. 450, 50 S.E.2d 545 (1948) (expenditure of tax revenues for a policeman to attend a training course); **World War I Veterans' Loan Fund:** *Hinton v. State Treasurer*, 193 N.C. 496, 137 S.E. 669 (1927); **Voter-Approved Sale of Municipal Bonds for the Construction of an Armory Outside the Corporate Limits:** *Morgan v. Town of Spindale*, 254 N.C. 304, 118 S.E.2d 913 (1961); **Off-Street Parking Under Certain Circumstances:** *Henderson v. City of New Bern*, 241 N.C. 52, 84 S.E.2d 283 (1954); **Municipal Appropriation**

**of Non-tax Revenues to the Chamber of Commerce to Advertise the Advantages of Raleigh:** *Dennis v. City of Raleigh*, 253 N.C. 400, 116 S.E.2d 923 (1960). These cases also serve to demonstrate the expanding scope of the concept of "public purpose" in a modern society which " 'requires governmental operation of facilities which were once considered exclusively private enterprises . . . and necessitates the expenditure of tax funds for purposes which, in an earlier day, were not classified as public.' " *Martin v. Housing Corp.*, 277 N.C. at 43, 175 S.E.2d at 672 (quoting *Mitchell v. Financing Authority*, 273 N.C. at 144, 159 S.E.2d at 750) (citations omitted). It is noteworthy that these cases include municipal ownership of facilities used for communication and recreation (including parks, auditoriums, libraries, and fairs) and any activities which may be said to further the educational interests of the citizens of the state or particular localities.

Instrumentalities of the state have been operating mass communications facilities for many years. Public radio stations are expressly authorized by N.C.G.S. § 143B-426.12. The University of North Carolina operates seven radio stations on its various campuses, including two at the Chapel Hill campus. That statute also establishes a Public Radio Advisory Committee of the North Carolina Agency on Public Telecommunications. The statute provides in part:

> It is the policy of the State of North Carolina that at least one public radio signal shall be made available to every resident of North Carolina . . . .

N.C.G.S. § 143B-426.12 (1979).

N.C.G.S. § 116-37.1 authorizes the Board of Governors of the University of North Carolina to operate the Center for Public Television, and public television programming from the Center reaches virtually the entire population of the state.

In addition to these state university media facilities, chapter 143B, article 9, part 22 of the North Carolina General Statutes provides for the establishment of the North Carolina Agency of Public Telecommunications. N.C.G.S. § 143B-426.10 provides that the North Carolina Agency for Public Telecommunications shall serve as an instrumentality of the State of North Carolina for the accomplishment, inter alia, of the following purposes:

(2) To foster and stimulate the use of telecommunications programming, services and systems for noncommercial educational and cultural purposes by public agencies for the improvement of the performance of governmental services and functions;

. . . .

(6) In addition to and not in place of the programs, projects, and services of The University of North Carolina Center for Public Television (or its functional predecessor), to develop and provide media programs and programming materials and services of a noncommercial educational, informational, cultural or scientific nature;

(7) To undertake innovative projects in interactive telecommunications and teleconferencing whenever such projects might serve to improve services, expand opportunities for citizen participation in government and reduce the costs of delivering a service;

. . . .

(15) To acquire, construct, equip, maintain, develop and improve such facilities as may be necessary to the fulfillment of the purpose of the Part[.]

N.C.G.S. § 143B-426.10(2), (6), (7), (15) (1987).

The state telecommunications agency subleases time on satellites and provides programming as part of an Open Public Events Network ("OPENnet"), which as early as 1984 was carried by seventy cable television systems throughout the state.

Our examination of statutes enacted by our General Assembly reveals a clear legislative intent and expression of the public policy of this state to foster public ownership and operation of both radio and television. Morganton's establishment of a municipal cable system would be entirely consistent with this policy. Invalidation of the legislative authorization for municipal cable television systems on the grounds urged by Madison Cable would call into question the constitutionality of these other statutes authorizing the expenditure of public funds on radio and television stations.

The previously discussed provisions of chapter 160A of the General Statutes authorizing municipalities to own and operate

cable television systems are consistent with the statutes enacted by the United States Congress. The Cable Communications Policy Act of 1984 provides that "a state or franchising authority [here, the City of Morganton] may hold any ownership interest in any cable system." 47 U.S.C.A. § 533(e)(1) (West 1984). Under the federal Act, however, the City Council may not exercise content control over the channels offered but must instead either designate an agency separate from the Council (such as an independent board or commission) to make programming decisions or establish some other mechanism which divorces content control from the operation of the facilities (such as by subscriber vote). *Id.*

[3] We hold that the establishment, financing, construction, operation, and maintenance of a cable television system by a municipality as authorized by General Statutes chapter 160A, article 16, part 1 involve a reasonable connection with the convenience and necessity of the City of Morganton and benefit the public generally, as opposed to special interests or persons, and thus constitute a "public purpose" within the meaning of article V, section 2(1) of the North Carolina Constitution. The determination of whether a particular function or activity constitutes a public purpose is a legal issue to be decided by the court. The trial judge did not err in granting summary judgment in favor of the City of Morganton and in denying summary judgment in favor of Madison Cable on this issue.

II.

[4] Madison Cable next contends that the City of Morganton's refusal to grant cable franchises to private applicants, including Madison Cable, and its decision to operate a municipal system violate the exclusive emoluments and monopoly clauses of our state Constitution and chapter 75 of our General Statutes. We disagree.

Article I, section 34 of the North Carolina Constitution provides in pertinent part: "monopolies are contrary to the genius of a free state and shall not be allowed." Article I, section 32 provides that "no person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." In effect, Madison Cable contends that the City Council's decision to establish a municipal cable system and to decline to grant franchises to other applicants establishes a monopoly and constitutes an exclusive emolument to the City, in violation of these constitutional provisions. We disagree.

We note at the outset that Morganton has not declared or established itself as the "exclusive" supplier of cable television service to its citizens. It has simply failed to renew Madison Cable's expired franchise or to grant a franchise to two other applicants for failure of their proposals to meet community needs. Specifically, it has not foreclosed for any period the possibility that franchises might be granted to other applicants. The City expressly left open the possibility that other cable companies could apply for and obtain a franchise in the future and committed itself to review the over-build situation five years after it issued its decision to operate a municipal system.

Even where a city grants a nonexclusive right or franchise to another "person or set of persons," it is not a grant of a monopoly within the meaning of the general constitutional prohibition against monopolies. *Thrift v. Elizabeth City*, 122 N.C. 31, 30 S.E. 349 (1898); *see also Durham v. State of North Carolina*, 395 F.2d 58 (4th Cir. 1968). The City of Morganton has neither established nor allowed the establishment of a monopoly for the operation of a cable television system.

[5] Article I, section 32 prohibits the grant of exclusive separate emoluments or privileges to any person or persons by the community unless in consideration for public services. First, the prohibition of this section contemplates a grant by "the community" to others. A city needs no grant from itself to own and operate public enterprises, including operating a CATV system; it does so in its own right pursuant to the authority granted to it by the legislature under General Statutes chapter 160A, article 16, part 1. It needs no franchise or other grant of authority from itself as do non-municipal suppliers of the same enterprise.

Second, it is clear that article I, section 32 contemplates that exclusive emoluments or privileges may be granted if "in consideration of public services." Franchises granted to public service companies come directly within the words and meaning of the constitutional exception. *Reid v. R. R.*, 162 N.C. 355, 78 S.E. 306 (1913). We have held that a "municipal corporation, an agency of the State, created for the benefit of the public," by definition falls within the exception for corporations providing "public services" and thus cannot violate the provisions of article I, section 32. *State v. Felton*, 239 N.C. 575, 585, 80 S.E.2d 625, 633 (1954).

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

Third, the purpose of the constitutional provision was not to prevent "the community" from exercising legislatively authorized powers to operate public enterprises but to prevent "the community" from surrendering its power to another "person or set of persons" by grant of exclusive or separate emoluments or privileges unless they are granted "in consideration of public services." It is not retention of powers but alienation of powers that is prohibited.

For these reasons, the decision of the City of Morganton to provide cable service itself rather than through a franchise does not violate article I, section 32 of our state Constitution.

[6] As noted previously herein, a violation of chapter 75 is alleged in the seventh claim for relief in the federal action, and pursuant to United States District Court Judge Jones' abstention order, Madison Cable included the claim in this state action. We therefore address it, although it is not separately presented and briefed in Madison Cable's brief before this Court.

The title of chapter 75 of our General Statutes is "Monopolies, Trusts and Consumer Protection." Except for its appearance in the title, the word "monopoly" does not appear in the chapter. The chapter relates generally to unfair methods of competition, deceptive trade practices, and unfair trade practices. Monopolies are pertinent insofar as they constitute a "contract, combination in the form of a trust or otherwise . . . in restraint of trade or commerce" which is illegal, N.C.G.S. § 75-1 (1981), or "[u]nfair methods of competition" or "unfair or deceptive acts or practices" in or. affecting commerce, N.C.G.S. § 75-1.1 (1977).

Madison Cable contends that the antitrust laws of chapter 75 ought to be read to prohibit Morganton from operating a municipally owned cable system and from denying its application, and those of others, for a franchise. We disagree. Cities are specifically authorized to establish municipally owned cable systems and to protect and regulate such systems once established and "may by ordinance make it unlawful to operate" a competing system without a franchise. N.C.G.S. § 160A-319 (1975). The power to grant or to refuse to grant a franchise is vested solely in the governing body of the city. This power is essentially legislative in nature, and its exercise is discretionary. *Cablevision v. City of Winston-Salem*, 3 N.C. App. 252, 164 S.E.2d 737 (1968). Because cities are authorized to own and operate cable systems and to prohibit others from doing so without a franchise and are not required to issue fran-

chises, it is clear that the legislature contemplated that there would be situations where private corporations would be displaced by municipal cable systems which would operate without competing franchises being issued. In this situation, the legislature cannot be presumed to have intended that conduct so clearly authorized could give rise to state antitrust liability.

Although not necessary to our decision of this issue, it is instructive to note the analogy between exempting a city's conduct from chapter 75 of the General Statutes (the state antitrust statute) and exempting certain municipal conduct under the "state action" exemption of the Sherman Act (15 U.S.C.A. § 1 (West 1974), the federal antitrust statute). Our chapter 75 is based on the Sherman Act:

> [T]he body of law applying the Sherman Act, although not binding upon this Court in applying G.S. 75-1, is nonetheless instructive in determining the full reach of that statute.

*Rose v. Vulcan Materials Co.*, 282 N.C. 643, 655, 194 S.E.2d 521, 530 (1973).

In *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 85 L. Ed. 2d 24 (1985), the United States Supreme Court held that a municipality's conduct with respect to provision of sewage service was protected by the state action exemption to the federal antitrust laws. That exemption was announced in *Parker v. Brown*, 317 U.S. 341, 87 L. Ed. 315 (1943), which held that an agricultural marketing program established by California was immune from scrutiny under the federal antitrust laws. Although municipalities do not automatically enjoy immunity under the state action exemption, *Community Communications Co. v. City of Boulder*, 455 U.S. 40, 70 L. Ed. 2d 810 (1982); *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 55 L. Ed. 2d 364 (1978), in *Town of Hallie*, the Court concluded that the municipality's actions with respect to sewage service were immune from federal antitrust attack where the applicable state statute authorized cities to construct and maintain sewage systems. The Court reasoned that

> the statutes clearly contemplate that a city may engage in anticompetitive conduct. Such conduct is a foreseeable result of empowering the City to refuse to serve unannexed areas.

471 U.S. at 42, 85 L. Ed. 2d at 31. The Court reasoned further that, because the anticompetitive conduct was the foreseeable result

MADISON CABLEVISION v. CITY OF MORGANTON

[325 N.C. 634 (1989)]

of the authorizations granted, the conduct was "state action" and therefore immune from federal judicial scrutiny. *Id.* at 44, 85 L. Ed. 2d at 32-33.

The powers conferred upon cities by the North Carolina General Statutes with respect to provision and franchising of cable television service reflect the clear contemplation that competition may be displaced with respect to this service. In the case of *Town of Hallie v. City of Chippewa Falls*, 105 Wis. 2d 533, 314 N.W.2d 321 (1982), the Supreme Court of Wisconsin concluded that actions which the legislature intended a municipality might take should not be subject to attack under the state's antitrust laws.

We are fortified in our decision on this issue by the reasoning and decision of the United States Supreme Court and the Wisconsin Supreme Court in the *Town of Hallie* cases.

The application of the antitrust provisions of chapter 75 to municipalities performing functions delegated to them by the legislature would have a paralyzing effect on their ability to effectuate important state policies. Where the legislature has authorized a city to act, it is free to carry out that act without fear that it will later be held liable under state antitrust laws for doing the very act contemplated and authorized by the legislature. We hold that municipal ownership and operation of cable television systems does not violate the provisions of chapter 75 of the General Statutes.

III.

Madison Cable contends that the trial judge erred in deciding the case on the motions for summary judgment. We disagree.

The issues presented in this case—whether the establishment of a municipally owned and operated cable television system is a public purpose within the meaning of article V, section 2(1) of our state Constitution and whether Morganton's refusal to grant franchises to private applicants and its decision to build and operate a cable system violate the provisions of article I, sections 32 and 34 of our state Constitution and chapter 75 of the General Statutes— are purely issues of law. No determination of genuine issues of fact was necessary to decide these questions. The trial judge did not err in determining the case on the motions for summary judgment.

In summary, we hold that the provisions of General Statutes chapter 160A, article 16, part 1 which authorize cities to finance, acquire, construct, own, and operate a cable television system, do not violate the public purpose clause of the North Carolina Constitution and that the City of Morganton's refusal to grant cable television franchises to private applicants, including plaintiff, and its decision to build and operate a municipal cable system do not violate the exclusive emoluments and monopoly clauses of article I, sections 32 and 34 of our Constitution or the antimonopoly or the unfair trade practices provisions of chapter 75 of the North Carolina General Statutes. We further hold that the trial judge did not err in allowing summary judgment for the defendant City and in denying summary judgment for the plaintiff Madison Cablevision, Inc.

Affirmed.