IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-30

Filed 5 November 2025

Pitt County, No. 24CVS001326-730

JERRY W. MCROY; KENNETH A. JONES; MARCUS J. KARACHUN; JEFFREY S. THOMAS; SANDY K. PHILLIPS; NORTH CAROLINA DIVISION OF SONS OF THE CONFEDERATE VETERANS, INC.; ROSE L. QUASEBARTH; MARGARET G. WILSON; and THE UNITED DAUGHTERS OF THE CONFEDERACY NORTH CAROLINA DIVISION, INC., Plaintiffs,

v.

PITT COUNTY, NORTH CAROLINA, Defendant.

Appeal by plaintiffs from order entered 19 August 2024 by Judge Wayland J. Sermons, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 14 August 2025.

*James B. Wilson & Associates, by James Barrett Wilson Jr., for plaintiffs-appellants.*

*Poyner Spruill LLP, by J. Nicholas Ellis, for defendant-appellee.*

ARROWOOD, Judge.

Jerry W. McRoy, Kenneth A. Jones, Marcus J. Karachun, Jeffrey S. Thomas, Sandy K. Phillips, the North Carolina Division of Sons of Confederate Veterans, Inc., Rose L. Quasenbarth, Margaret G. Wilson, and The United Daughters of the Confederacy North Carolina Division, Inc. (collectively "plaintiffs") appeal from the trial court's order dismissing their complaint against Pitt County ("defendant").

Plaintiffs contend the trial court erred in dismissing their complaint for lack of standing and subject matter jurisdiction. For the following reasons, we affirm the trial court.

## I.     Background

Plaintiffs McRoy, Jones, Karachun, Thomas, Phillips, Quasenbarth, and Wilson are citizens and residents of Pitt County. The North Carolina Division of Sons of Confederate Veterans, Inc. ("SCV") and The United Daughters of the Confederacy – North Carolina Division, Inc. ("UDC") are nonprofit organizations organized and existing under the laws of North Carolina. These organizations are affiliated with the Sons of Confederate Veterans, Inc., originally organized in Virginia in 1896, and the United Daughters of the Confederacy, Inc., incorporated in the District of Columbia in 1919.

Plaintiffs initially filed a complaint and motion for temporary restraining order on 3 May 2024. Plaintiffs filed an amended complaint on 12 June 2024 seeking a declaratory judgment that defendant's removal of a statue depicting a Confederate soldier ("the monument") from the grounds of the Pitt County Courthouse was *ultra vires* and "beyond the course and scope of Defendant's authority under N.C. Gen. Stat. § 100-2.1" and in violation of North Carolina jurisprudence and other legal authorities. The amended complaint alleged that the monument was donated by the UDC in 1914, and was removed following a vote by the Pitt County Board of Commissioners on or about 22 June 2020. Plaintiffs also sought a temporary

restraining order and preliminary injunction to prohibit defendant "from removing or otherwise relocating the Monument pending resolution of the issues arising from" the amended complaint. With respect to standing, plaintiffs asserted an interest in the property and events underlying the action which would be "injuriously affected" by defendant's actions, additionally asserting representational standing for SCV and UDC.

Defendant filed an answer and motion to dismiss on 28 June 2024. Defendant asserted in the pleadings that plaintiffs lacked standing, had no private cause of action under the Monument Act, and that the claims were barred by the statute of limitations. Defendant concurrently filed a notice of hearing on the motion.

The motion to dismiss was heard on 19 August 2024. Defendant's counsel began the hearing by noting that plaintiffs did not claim any ownership interest in the monument or any contractual relationship with defendant concerning how the monument was utilized or displayed. Defendant further argued plaintiffs had not made the required allegations for a claim of taxpayer standings, specifically by failing to "allege that there had been a demand on and refusal by proper authorities to institute proceedings for the protection of their interests." Regarding plaintiffs' claim under the North Carolina Constitution, defendant argued that plaintiffs had failed to allege and establish a legal or factual injury arising from defendant's actions.

Plaintiffs' counsel argued there was a geographical relationship and particularized interest in the monument through plaintiffs' ancestry and status as

taxpayers. Plaintiffs asserted their case was distinguishable from the recently decided *Society for the Historical Preservation of the Twenty-Sixth North Carolina Troops, Inc. v. City of Asheville*, 385 N.C. 744, 745 (2024), as the pleadings added specific named plaintiffs challenging defendant's action as taxpayers. Plaintiffs further asserted a public policy argument under N.C.G.S. § 100-2.1 that the removal of monuments was under "strict limitations" and that monuments could only be relocated within the jurisdictional limits in a place of equal prominence and access.

Following the hearing, the trial court entered an order granting defendant's motion to dismiss pursuant to Rule 12(b)(1). Plaintiffs filed notice of appeal on 11 September 2024.

## II. Discussion

Plaintiffs contend the trial court erred in dismissing their amended complaint under Rule 12(b)(1) for lack of standing and for denying plaintiffs' request to make findings of fact and conclusions of law. We disagree.

### A. Standard of Review

We review the trial court's decision on a motion to dismiss for lack of standing under *de novo* standard of review. *United Daughters of the Confederacy v. City of Winston-Salem*, 383 N.C. 612, 624 (2022) (citation omitted). Under *de novo* review, this Court "considers the matter anew and freely substitutes its own judgment for that of the trial court." *Brown v. N.C. Dep't of Pub. Safety*, 256 N.C. App. 425, 427 (2017) (citation omitted). Additionally, "we view the allegations as true and the

supporting record in the light most favorable to the non-moving party." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644 (2008).

## B.     Standing

Standing is a "necessary prerequisite to a court's proper exercise of subject matter jurisdiction," and may be challenged "at any stage of the proceedings, even after judgment." *Willowmere Cmty. Ass'n, Inc. v. City of Charlotte*, 370 N.C. 553, 561 (2018) (citations omitted).  "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 372 (2013) (citation and internal quotation marks omitted).  "A party seeking to enjoin the removal of a monument owned by a political subdivision of this State through a private suit must, at minimum, allege a legal interest for their claims to survive a motion to dismiss under Rule 12(b)(1)." *Soc'y for the Hist. Pres. of the Twenty-Sixth*, 385 N.C. at 748 (citing *United Daughters*, 383 N.C. at 649).

Plaintiffs raise several arguments to assert they have standing to bring this action.  We address each in turn.

### 1.     N.C.G.S. § 143-318.16

Plaintiffs first contend they have standing pursuant to N.C.G.S. § 143-318.16, arguing "[t]his grant of standing provides that any person may seek a declaratory judgment, and that the plaintiff is not required to allege or prove any special damage different from that suffered by the public at large."  However, plaintiffs failed to raise this argument before the trial court, and a party "cannot raise on appeal issues which

were not pleaded or raised below." *Bethesda Rd. Partners, LLC v. Strachan*, 267 N.C. App. 1, 7 (2019); *see also* N.C.R. App. P. 10(a)(1). Accordingly, plaintiffs are unable to assert standing under this statute; we further note that even had this argument been presented to the lower court, the statute is an "open meetings law" and is inapplicable to plaintiffs' alleged causes of action.

## 2. Taxpayer Standing

Plaintiffs next argue they have standing to bring this action as taxpayers.

> Where a plaintiff undertakes to bring a taxpayer's suit . . . , his complaint must disclose that he is a taxpayer of the agency or subdivision, and allege facts that adequately establish either: (1) that there has been a demand on and a refusal by the proper authorities to institute proceedings for the protection of the interests of the public agency or political subdivision, or (2) that a demand on such authorities would be useless.

*Pugh v. Howard*, 288 N.C. App. 576, 581 (2023) (quoting *United Daughters*, 383 N.C. at 630–31) (cleaned up). In *Pugh*, although the complaint alleged the individual plaintiffs were taxpayers, it failed to allege there had been a demand on and refusal by proper authorities, or that such a demand would have been useless, and accordingly this Court overruled the argument. *Id.*

Similarly here, plaintiffs' amended complaint fails to sufficiently allege a demand on and refusal by the Pitt County Board of Commissioners, or that such a demand would have been useless. In their reply brief, plaintiffs characterize defendant's invocation of *United Daughters* and *Pugh* as a "fallacious attempt" to

argue that plaintiffs lacked standing as taxpayers. Plaintiffs contend the following was sufficient to meet the elements for taxpayer standing: (1) the amended complaint alleged the monument had been removed; (2) the complaint was filed in response to the removal; (3) the amended complaint included a link to the minutes of a board meeting wherein one of the named plaintiffs stated his objection to the removal; and (4) plaintiffs' attorney sent a letter on 14 April 2024 objecting to the removal.

Plaintiffs do allege the Pitt County Commissioners violated the Monuments Act among other assertions of wrongful conduct; these contentions and the filing of the complaint indicate plaintiffs' objection to the relocation of the monument and their belief that defendant lacked the authority to do so. However, the four corners of the amended complaint do not meet the elements to establish taxpayer standing as set forth in *United Daughters* and *Pugh*. It is unclear from the amended complaint what specific demand was made on the Board of Commissioners, nor does the complaint indicate defendant's refusal to institute protective proceedings upon such a demand. The amended complaint similarly fails to establish that such a demand would have been useless.

Plaintiffs cite several other cases, including *Freeman v. Board of Commissioners*, 217 N.C. 2097 (1940), and *Goldston v. State*, 361 N.C. 26 (2006), which support "the proposition that individuals as citizens and taxpayers have standing to challenge actions of a county board of commissioners that involve the payment of public funds for unauthorized purposes[,]" and are necessarily implicated

in this case as defendant's action required the expenditure of public funds which were obtained from taxes levied on plaintiffs. Plaintiffs also cite *Committee to Elect Dan Forest v. Employees Political Action Committee*, 376 N.C. 558 (2021) arguing they sustained a legal injury as taxpayers. Although it is true that taxpayers have standing to challenge actions in certain cases and upon sufficient allegations, plaintiffs again fail "to demonstrate that [they have] sustained a legal or factual injury arising from defendant's actions as a prerequisite for maintaining the present declaratory judgment action." *United Daughters*, 383 N.C. at 629. Plaintiffs' amended complaint does not sufficiently allege nor demonstrate a legal or factual injury to plaintiffs as taxpayers, and accordingly plaintiffs are unable to establish standing as taxpayers to maintain the declaratory judgment action.

### 3. Representational Standing

"Legal entities other than natural persons may have standing." *River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 129 (1990). To establish standing, an organization "or one of its members must suffer some immediate or threatened injury." *Id.* Additionally, an association "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks

to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 130 (citation omitted). "When an organization seeks declaratory or injunctive relief on behalf of its members, 'it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.' " *Id.* (quoting *Warth*, 422 U.S. at 515).

As discussed previously and throughout this opinion, the individual plaintiffs are unable to establish taxpayer standing, and have failed to allege or establish standing on any other rights, injuries, or legally protected interests. Accordingly, the plaintiff associations fail to satisfy the first requirement that its individuals would otherwise have standing. Although we acknowledge the purpose of the plaintiff organizations are for historical, benevolent, memorial, and educational programs, plaintiffs have failed to identify a legally protected interest in the monument. The amended complaint was properly dismissed for lack of representational standing.

### 4. Standing Under N.C.G.S. § 100-2.1

Plaintiffs further contend, related to their arguments on taxpayer standing, that they have standing on the ground that defendant committed an *ultra vires* act, arguing "taxpayers of municipal corporations have the right and the duty to hold such entities accountable for their actions and to restrain them from undertaking actions which are unauthorized." Plaintiffs assert that defendant's action "is unlawful

because it contravenes the express public policy of the State of North Carolina as enunciated in the Monument Protection Act[,]" and that "no municipal corporation has the authority to act in a manner which contravenes the requirements of a duly enacted statute."

If a party, whether an individual or organization, "fail[s] to allege the infringement of a legal right arising under a cause of action at common law, a statute, or the North Carolina Constitution, dismissal is appropriate." *Soc'y for the Hist. Pres. of the Twenty-Sixth*, 385 N.C. at 749. On the other hand, "if such parties establish standing by alleging an ownership, contractual, or other cognizable interest as described in our precedent, dismissal under Rule 12(b)(1) is error." *Id.*

> [W]hen the legislature exercises its power to create a cause of action under a statute, even where a plaintiff has no factual injury and the action is solely in the public interest, the plaintiff has standing to vindicate the legal right so long as he is in the class of persons on whom the statute confers a cause of action.

*Comm. to Elect Dan Forest*, 376 N.C. 558, 608 (2021).

In *United Daughters*, our Supreme Court answered this question with respect to N.C.G.S. § 100-2.1:

> We are unable to identify anything in N.C.G.S. § 100-2.1, particularly when read in conjunction with the allegations of the amended complaint, that explicitly authorizes the assertion of a private cause of action for the purpose of enforcing that statutory provision. The absence of explicit language authorizing the assertion of a private right of action based on N.C.G.S. § 100-2.1 stands in stark contrast to the statute at issue in *Committee to Elect Dan Forest*,

- 10 -

> which specifically authorized a candidate for elected office who had complied with the relevant campaign finance laws to sue an opposing candidate or candidate committee for an alleged violation of those same laws. . . . Instead, N.C.G.S. § 100-2.1 *prohibits* the removal or relocation of certain specified objects that are owned by the State or located on public property. Finally, even if N.C.G.S. § 100-2.1 could be interpreted to implicitly authorize the assertion of a private right of action, nothing in the relevant statutory language or the allegations contained in the amended complaint suggests that plaintiff would be "in the class of persons on which the statute confers the right[.]"

*United Daughters*, 383 N.C. at 638 (citations omitted).

As previously discussed, plaintiffs failed to establish standing as taxpayers on the pleadings. There is no alleged contractual relationship, nor have plaintiffs brought an action to quiet title or otherwise assert an ownership interest in the monument. Rather, as the amended complaint alleges, the monument was *donated* to Pitt County in 1914.

Although plaintiffs argue defendant's action was illegal under N.C.G.S. § 100-2.1, plaintiffs have asserted no legal or factual injury, or other legal interest, that establishes standing to pursue a private cause of action under the statute. Plaintiffs' amended complaint fails to establish standing to prosecute a claim under N.C.G.S. § 100-2.1 and was properly dismissed.

### 5.    Standing Under the North Carolina Constitution

Finally, plaintiffs contend they have standing pursuant to Article I, Section 19 of the North Carolina Constitution:

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

N.C. Const. art. I, § 19.  Plaintiffs assert the exclusion of Southern identity and heritage by way of acting to relocate the monument "is quite simply a form of discrimination."  Plaintiffs cite *North Carolina State Conference of National Association for the Advancement of Colored People v. Alamance County*, 293 N.C. App. 107 (2024), arguing that "[i]f the plaintiffs in *Alamance* were allowed to proceed in litigation intended to use the Monument Protection Act as justification for removing a monument from the grounds of a county courthouse, it logically follows" that plaintiffs should have an equal opportunity to do so to prevent the removal of a memorial.

"[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution."  *Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761, 782 (1992).  "[T]he common law, which provides a remedy for every wrong, will furnish the appropriate action for the adequate redress of a violation of that right." *Id.*

We again find our Supreme Court's analysis in *United Daughters* instructive on this argument.  In that case, the plaintiffs asserted the defendant's actions

"infringe[d] upon the freedom of speech" of the plaintiffs and citizens of the county, that these actions "violate[d] the right of equal protection pursuant to the [Fourteenth] Amendment," and that "[p]laintiff will be irreparably harmed if [d]efendants take affirmative action to remove or relocate the [monument] prior to a full adjudication of the respective rights and obligations of the [p]arties." *United Daughters*, 383 N.C. at 630. The Court rejected those assertions as "nothing more than conclusory statements devoid of any factual or legal support." *Id.*

Here, plaintiffs "allege and say that they have been deprived of their liberties and privileges in contravention of the law of the land[,]" and have "direct and significant interests to objects of remembrance which constitute public property," in addition to being "denied equal protection of the laws and that they have been subjected to discrimination by Defendant." These allegations are substantially the same as those rejected by the Supreme Court in *United Daughters*. Accordingly, we find this case to be analogous to *United Daughters* and hold that plaintiffs failed to identify any legal rights conferred by the North Carolina Constitution that were deprived by defendant's conduct.

Regarding plaintiffs' arguments on *Alamance*, we note that the opinion does not address the issue of standing, and it does not appear that the plaintiffs' standing to pursue their claim was challenged; the lower court heard cross-motions for summary judgment, rather than a motion to dismiss under 12(b). As it is unclear from the analysis in *Alamance* whether or not the plaintiffs presented sufficient

allegations in their complaint to establish standing, we decline to adopt plaintiffs' view here that *Alamance* is sufficient authority to establish standing for any party challenging the presence of a monument under N.C.G.S. § 100-2.1.

### C.     Request for Findings of Fact

Lastly, plaintiffs contend the trial court should have made findings of fact in granting the motion to dismiss because the court ruled that it lacked jurisdiction.

"The purpose of the entry of findings of fact by a trial court is to resolve contested issues of fact, to make clear what was decided for purposes of res judicata and estoppel, and to allow for meaningful appellate review." *Maynard v. Crook*, 289 N.C. App. 357, 367 (2023) (citations omitted). "As resolution of evidentiary conflicts is not within the scope of Rule 12 and findings of fact in a Rule 12 order are not binding on appeal," orders granting a Rule 12(b) motion to dismiss "generally should not include findings of fact." *Id.* (citing *White v. White*, 296 N.C. 661, 667 (1979))

Pursuant to Rule 52(a)(2) of the Rules of Civil Procedure "the trial court is not required to make specific findings of fact unless requested by a party." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694 (2005) (citation omitted). "When the record contains no findings of fact, it is presumed . . . that the court on proper evidence found facts to support its judgment." *Id.* (cleaned up). A trial court may be required to make findings of "specific facts which support its ultimate disposition of the case . . . to allow a reviewing court to determine from the record whether the judgment and the legal conclusions which underlie it represent a

correct application of the law." *Coble v. Coble*, 300 N.C. 708, 712 (1980). "The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead 'to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system.' " *Id.* (citation omitted).

Although plaintiffs' request for findings of fact was denied by the trial court, we do not find that this was error. As previously discussed, the primary question in this case and upon the motion to dismiss is whether plaintiffs had standing to pursue their claims. That question is resolved by plaintiffs' amended complaint, which failed to establish standing on any basis. The omission of written findings of fact from the trial court's order did not prevent or otherwise constrain our ability to conduct a *de novo* review of the amended complaint. Accordingly, the trial court did not err in failing to include specific written findings of fact in the order dismissing plaintiffs' complaint.

## D.     Statute of Limitations

We lastly note that even had plaintiffs' amended complaint sufficiently established standing on any basis, the removal was effected on or about 22 June 2020, and the initial complaint was not served or filed until 3 May 2024, almost four years later. Accordingly, the statute of limitations had run prior to the action being brought.

## III.     Conclusion

For the foregoing reasons, we affirm the trial court's order.

AFFIRMED.

Judge CARPENTER concurs.

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

The majority's opinion incorrectly holds Plaintiffs' request for findings of fact being denied by the trial court was not prejudicial error, concludes Plaintiffs lack standing, and affirms the trial court's order. I vote to vacate and remand the order dismissing Plaintiffs' complaint. I respectfully dissent.

## I. The Monument

The Pitt County Board of Commissioners (the "Board") voted on 22 June 2020 to remove a war grave memorial marker and monument dedicated to Pitt County's "Our Confederate Dead" located at the Pitt County Courthouse and depicting a representative and unidentified American Civil War soldier standing upon a pedestal (the "Memorial" or "Monument"). The cost of the Memorial was raised by families of war dead, veterans, and the United Daughters of the Confederacy and was dedicated on 13 November 1914 by Governor Locke Craig to memorialize the war dead and veterans and as a tombstone for the war dead who did not return home.

Defendant unlawfully removed the tombstone and Memorial and placed it in storage. The Board voted to donate the tombstone and Memorial to Commemorating Honor, Inc. on 15 April 2024. Commemorating Honor, Inc. stated the Monument will be relocated away from Pitt County only for display at Valor Memorial Park in Davidson County or Lee-Jackson Memorial Park in Rockbridge County, Virginia.

Jerry W. McRoy, Kenneth A. Jones, Marcus J. Karachun, Jeffrey S. Thomas, Sandy K. Phillips, Rose L. Quasebarth, and Margaret G. Wilson are citizens and

residents of Pitt County. The Daughters of the Confederacy-North Carolina Division is an active entity in good standing, chartered by the North Carolina Secretary of State as a North Carolina non-profit corporation on 16 September 1992. The Daughters of the Confederacy-North Carolina Division's stated purpose in its charter is for "historical, benevolent, memorial, educational and patriotic programs, plan events and scholarships[.]" The United Daughters of the Confederacy raised the funds and facilitated the construction and placement of the Memorial over 110 years ago.

The North Carolina Division of the Sons of Confederate Veterans, Inc. is also an active non-profit corporation existing under the laws of North Carolina which exists "for the purpose of honoring and remembering the sacrifices made by those who served in the armed forces of the Confederate States of America during the American Civil War."

## II.    N.C. Gen. Stat. § 100-2.1

The General Assembly enacted N.C. Gen. Stat. § 100-2.1(b) (2023) ("Monument Protection Law"), which mandates: "An object of remembrance located on public property may not be permanently removed and may only be relocated, whether temporarily or permanently, under the circumstances listed in this subsection and subject to the limitations in this subsection." N.C. Gen. Stat. § 100-2.1(b) (2023). An "object of remembrance" is defined as "a monument . . . that commemorates an event, a person, or military service that is part of North Carolina's history." *Id.*

2

Our Court has held:

> In so concluding, we note our federal government recognizes that service in the Confederate Army qualifies as "military service." *See* 38 U.S.C. § 1501 ("The term 'Civil War veteran' includes a person who served in the military or naval forces of the Confederate States of America during the Civil War"); *Id.* § 1532 (allowing surviving spouses of Confederate soldiers to qualify as surviving spouses of Civil War veterans for receiving pensions). We further note that North Carolina recognizes "Confederate Memorial Day" as a legal public holiday. N.C. Gen. Stat. § 103-4(a)(5) (2023). Thus, we conclude as a matter of law that the Monument was of the type intended to be covered by the General Assembly when it enacted the Monument Protection Law.

*N.C. State Conf. of the NAACP v. Alamance Cnty.*, 293 N.C. App. 107, 110, 900 S.E.2d 224, 227-28 (2024).

The record shows the Monument is a memorial and tombstone located on public property which commemorates military service that is part of North Carolina's history. The Monument is clearly the type of object intended to be protected by our General Assembly when it enacted the Monument Protection Law. *Id.*

### III. Standing

#### A. Committee to Elect Dan Forest

Our Supreme Court extensively discussed the development and current status of our State's standing doctrine as it applies to the General Assembly's statutorily-granted rights in *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.,* 376 N.C. 558, 853 S.E.2d 698 (2021) ("*Dan Forest*"):

> In summary, our courts have recognized the broad

authority of the legislature to create causes of action, such as "citizen-suits" and "private attorney general actions," even where personal, factual injury did not previously exist, in order to vindicate the public interest. In such cases, the relevant questions are only whether the plaintiff has shown a relevant statute confers a cause of action and whether the plaintiff satisfies the requirements to bring a claim under the statute. There is no further constitutional requirement because the issue does not implicate the concerns that motivate our standing doctrine. *See, e.g., Stanley [v. Department of Conservation and Development*, 284 N.C. 15, 28, 199 S.E.2d 641 (1973)]. The existence of the legal right is enough. Having surveyed the relevant English, American, and North Carolina law of standing, we are finally in a position to determine whether . . . the North Carolina Constitution imposes an "injury-in-fact" requirement, as under the federal constitution. While our Court of Appeals has previously come to that conclusion, which was followed by numerous panels of that court, *see, e.g., Neuse River Foundation, Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113-15, 574 S.E.2d 48 (2002) (holding North Carolina law requires "injury in fact" for standing and applying *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 119 L. Ed. 2d 351 (1992)), we are not bound by those decisions and conclude our Constitution does not include such a requirement.

*Id.* at 599, 853 S.E.2d at 727-28.

Our Supreme Court further held, "we take this opportunity to reiterate that '[w]hen a person alleges the infringement of a legal right arising under a cause of action at common law, a statute, or the North Carolina Constitution, . . . the legal injury itself gives rise to standing.'" *The Soc'y for the Hist. Preses. of the Twenty-Sixth North Carolina Troops, Inc. v. City of Asheville*, 385 N.C. 744, 751, 898 S.E.2d 760, 765 (2024) (citing *Comm. to Elect Dan Forest*, 376 N.C. at 608, 853 S.E.2d at 698).

4

Individuals and organizations, which have pleaded and articulated the interests they seek to protect are germane to their stated purposes, and which seek to vindicate and protect the interest of its members, can assert standing. *Id.*

In *Dan Forest*, the Supreme Court also expressly abrogated any portion of this Court's opinion in *Neuse River Foundation, Inc. v. Smithfield Foods, Inc.,* inconsistent with their analysis therein. *Dan Forest*, 376 N.C. at 601 n.44, 853 S.E.2d at 729 n.44. The Court held North Carolina's Constitution does not impose a requirement for a plaintiff or petitioner to allege an "injury in fact" when challenging the validity of or asserting the applicability of a statute, and particularly against disturbing or removing a war grave marker, tombstone, memorial, or monument. *Id.* at 606-07, 853 S.E.2d at 732-33; *see* N.C. Gen. Stat. § 100-2.1 (2023).

The Supreme Court also held the language unrelated to standing in *Stanley v. Department of Conservation and Development* cited above in *Dan Forest*, was "an aberration and must be considered *dictum*[.]" *Madison Cablevision, Inc. v. City of Morganton*, 325 N.C. 634, 645-48, 386 S.E.2d 200, 207-08 (1989). Instead, cases challenging the constitutionality of government action impose "a rule of prudential self-restraint" to ensure our courts only address actual controversies. *Dan Forest*, 376 N.C. at 599, 853 S.E.2d at 728.

Our Supreme Court also clarified the requirements for a party to establish a specific claim under a statute:

> When a person alleges the infringement of a legal right

5

arising under a cause of action at common law, a statute, or the North Carolina Constitution, however, the legal injury itself gives rise to standing. *The North Carolina Constitution confers standing to sue in our courts on those who suffer the infringement of a legal right, because "every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law."* N.C. Const. art. I, § 18, cl. 2. Thus, when the legislature exercises its power *to create a cause of action* under a statute*, even where a plaintiff has no factual injury and the action is solely in the public interest, the plaintiff has standing to vindicate the legal right* so long as he is in the class of persons on whom the statute confers a cause of action.

*Id*. at 608, 853 S.E.2d at 733 (emphasis supplied).

## B. United Daughters of the Confederacy

In *United Daughters of the Confederacy,* our Supreme Court reviewed and stated the specific requirements needed to establish standing to challenge under similar facts, and the Court held the proper remedy for lack of jurisdictional standing issues is to dismiss without prejudice:

> A careful analysis of the amended complaint satisfies us that plaintiff has failed to identify any legal right conferred by the common law, state or federal statute, or the state or federal constitutions of which they have been deprived by defendants' conduct.
>
> . . . .
>
> Although the amended complaint claims that the local chapter was involved in raising funds to erect the monument and that it received permission from the County to place the monument outside the old county courthouse building in 1905, plaintiff does not allege that the local chapter or any of its members retained an ownership

6

interest in the monument or had executed a contract with the County providing that the monument would remain upon the old courthouse property in perpetuity. As a result, even construing plaintiff's allegations concerning the funding for and erection of the monument as true, the mere fact that the local chapter "funded and erected the [monument]" does not suffice to establish standing in the absence of an affirmative claim to have some sort of proprietary or contractual interest in the monument. This is particularly true given that the plaintiff's allegations that the City's actions violated various state and federal laws, which we address in further detail below, assume that the *County*, rather than plaintiff, owns the monument.

In addition, our taxpayer standing jurisprudence makes it clear that, "where a plaintiff undertakes to bring a taxpayer's suit on behalf of a public agency or political subdivision, his complaint must disclose that he is a taxpayer of the agency [or] subdivision," *Branch v. Bd. of Ed. of Robeson Cnty.*, 233 N.C. 623, 626 (1951) (citing *Hughes v. Teaster*, 203 N.C. 651 (1932)); *see also Fuller*, 145 N.C. App. at 395-96, and "allege facts sufficient to establish" either that "there has been a demand on and a refusal by the proper authorities to institute proceedings for the protection of the interests of the public agency or political subdivision" or that "a demand on such authorities would be useless." *Id.* Although plaintiff has included such assertions in its brief before this Court, no such allegations appear in the amended complaint. *See Davis v. Rigsby*, 261 N.C. 684, 686 (1964) (noting that "[a] party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive against the pleader).

. . . .

In the same vein, we hold that the amended complaint fails to allege sufficient facts necessary to establish associational standing. Although plaintiff argues that it is a "legacy organization whose purposes include 'historical, benevolent, memorial, [In addition, given that plaintiff did

7

not advance this argument before the Court of Appeals, it is not permitted do so for the first time before this Court. *See Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 309 (2001) (noting the longstanding rule that "issues and theories of a case not raised below will not be considered on appeal;" *see also* N.C. R. App. P. 10(a) (providing that issues not raised in a party's brief are deemed abandoned).] educational and patriotic programs;'" that its charter "clearly and [un]equivocally gives it an articulated interest in the status and preservation of objects of remembrance such as the [m]onument;" that it "has succeeded to the interests of those deceased members of an affiliated chapter who were responsible for designing, funding, and erecting the [monument];" and that it has "a specific requirement for membership . . . that one is a lineal descendant of an individual who served in the government or the armed forces of the Confederacy," none of these factual allegations are raised in the amended complaint. In addition, the amended complaint does not identify any of plaintiff's individual members or describe how the legal rights of any of plaintiff's individual members have been violated. As a result, the amended complaint fails to allege facts sufficient to show that "the interests [plaintiff] seeks to protect are germane to the organization's purpose" or that its members "would otherwise have standing to sue in their own right." *River Birch Assocs.*, 326 N.C. at 130, 388 S.E.2d at 538.

*United Daughters of the Confederacy v. City of Winston-Salem*, 383 N.C. 612, 629-32, 881 S.E.2d 32, 47-48 (2022).

Considering these precedents, and after the Supreme Court's decision in *Dan Forest,* a two-step test is used to determine whether plaintiffs have standing to challenge a county's legislative action to remove a tombstone, memorial or monument. First, as set forth by *Dan Forest*, we must first determine if the relevant

8

statute, here the Declaratory Judgment Act ("DJA"), confers upon Plaintiff a cause of action. Plaintiffs must show the DJA confers a cause of action generally and Plaintiffs are among the class of persons upon whom the cause of action was conferred. *See id.* at 607-09, 853 S.E.2d at 733-34. Plaintiffs allegations clearly meet the first step.

The second question becomes whether Plaintiffs have satisfied the statutory requirements under the DJA or other statute to bring a claim. *See id.* at 599, 608 n. 51, 853 S.E.2d at 727-28, 733 n. 51. N.C. Gen. Stat. § 100-2 was amended in 2015 to add N.C. Gen Stat. § 100-2.1, "Protection of Monuments, Memorials, and Works of Art", which expands the protections and limits the removal of "an object of remembrance" located on public property. An "object of remembrance" is broadly defined and includes war grave markers, tombstones, memorials, and Confederate soldier and veteran monuments, and the statute protects and prohibits removal or relocation except in certain circumstances. *Id.*

Under *Dan Forest*, any alleged infringement of a legal right is sufficient to establish standing, and Plaintiffs need not allege any "injury in fact." *Id.* at 599, 853 S.E.2d at 728. "[T]o the extent it implicates the doctrine of standing, our [Constitutional] remedy clause should be understood as *guaranteeing* standing to sue in our courts where a legal right at common law, by statute, or arising under the North Carolina Constitution has been infringed." *Id.* at 607, 853 S.E.2d at 733; *see* N.C. Const. art. I, § 18.

### C. *Cmty. Success Initiative v. Moore*

Our Supreme Court more recently applied both *Dan Forest* and *United Daughters of the Confederacy* in *Cmty. Success Initiative v. Moore,* holding:

> The standing requirements articulated by this Court are not themselves mandated by the text of the North Carolina Constitution. *See Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 599, 853 S.E.2d 698, 728 (2021) ("[T]he 'judicial power' provision [in Article IV] of our Constitution imposes no particular requirement regarding 'standing' at all."). This Court has developed standing requirements out of a "prudential self-restraint" that respects the separation of powers by narrowing the circumstances in which the judiciary will second guess the actions of the legislative and executive branches. *Id.*
>
> . . . .
>
> To ensure the requisite concrete adverseness, "a party must show they suffered a 'direct injury.' The personal or 'direct injury' required in this context could be, but is not necessarily limited to, 'deprivation of a constitutionally guaranteed personal right or an invasion of his property rights.'" *Forest*, 376 N.C. at 607-08, 853 S.E.2d at 733 (citations omitted).
>
> . . . .
>
> The direct injury criterion applies even where, as here, a plaintiff assails the constitutionality of a statute through a declaratory judgment action. *See United Daughters*, 383 N.C. at 629, 881 S.E.2d at 46-47 ([P]laintiff is still required to demonstrate that it has sustained a legal or factual injury arising from defendants' actions as a prerequisite for maintaining the present declaratory judgment action.").

*Cmty. Success Initiative v. Moore*, 384 N.C. 194, 206-07, 886 S.E.2d 16, 28-29 (2023).

### D. Defendant's Rule 12(b)(1) Motion

"Jurisdiction is [t]he legal power and authority of a court to make a decision

10

that binds the parties to any matter properly brought before it." *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 789-90 (2006) (citation and internal quotation marks omitted). "The court must have personal jurisdiction and . . . subject matter jurisdiction [, which is] [j]urisdiction over the nature of the case *and* the type of relief sought, in order to decide a case." *Catawba Cty. v. Loggins*, 370 N.C. 83, 88, 804 S.E.2d 474, 478 (2017) (citation omitted) (emphasis supplied).

In *United Daughters of the Confederacy*, the trial court had granted the defendants' motions to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6) (2021) *with prejudice.* 383 N.C. at 650, 881 S.E.2d at 60.

"[A] taxpayer has standing to bring an action against appropriate government officials for the alleged misuse or misappropriation of public funds." *Goldston v. State*, 361 N.C. 26, 33, 637 S.E.2d 876, 881 (2006). In North Carolina, the status of taxpayer may confer standing to sue a governmental entity where the plaintiff's complaint alleges facts which establish either "there has been a demand on and refusal by the proper authorities to institute proceedings for the protection of interests of the public agency or political subdivision," or that "a demand on such authorities would be useless." *United Daughters*, 383 N.C. at 630-31, 881 S.E.2d at 47-48. In such cases, standing to sue may require a showing of either "a demand on and a refusal by the proper authorities to institute proceedings or that a demand on such authorities would [have] be[en] useless." *Pugh v. Howard*, 288 N.C. App. 576,

581, 887 S.E.2d 734,740 (2023) (quoting *United Daughters* at 630-631, 881 S.E.2d at 47-48).

Here, Plaintiffs contend they made such a demand to and upon proper authorities and representatives of Defendant and the Board, noting the Amended Complaint asserts and contains a "link to the minutes of a BOCC meeting wherein Plaintiff Marcus J. Karachun among other citizens stated their objection to the removal." The record before this Court does not include a recording or transcript of the minutes from this meeting, and as a result we cannot determine whether the content and format of the objection comported with the requirements to establish taxpayer standing. This Court cannot determine whether the context and format of the objection comported with the requirements to establish taxpayer standing.

The majority's opinion baldly concludes the request for findings of fact being denied by the trial court was not error because "the primary question in this case and upon the motion to dismiss is whether the plaintiffs had standing to pursue their claims." The majority's assertion "[t]he omission of written findings of fact from the trial court's order did not prevent or otherwise constrain our ability to conduct a *de novo* review of the amended complaint" is wholly untrue in this case.

Our Court has long held: "A trial court, however, is not required to make findings of fact absent a party's request." *Brown v. Foremost Affiliated Ins. Servs., Inc.*, 158 N.C. App. 727, 732, 582 S.E.2d 335, 339 (2003) (citing *Gibson v. Mena*, 144 N.C. App. 125, 128, 548 S.E.2d 745, 747 (2001)). Here, however, Plaintiffs made a

valid request for findings pursuant to Rule 52. N.C. Gen. Stat. § 1A-1, Rule 52(a) (2023).

The order of the trial court is properly vacated and remanded to the trial court to review and make findings regarding these objections and conclusions on whether they are sufficient to confer taxpayer or other standing to Plaintiffs.

## IV. Majority's Alternative Holding

The majority's opinion asserts as a purported alternative basis: "Accordingly, the statute of limitations had run prior to the action being brought." Presuming this waivable affirmative defense was properly asserted and preserved before the trial court, the trial court dismissed Defendant's Rule 12(b)(6) Motion to Dismiss as moot. Defendant did not appeal this dismissal to this Court and it is final.

The statute of limitations is neither an alternative basis to support the trial court allowing Defendant's Rule 12(b)(1) motion to dismiss for lack of standing, nor is this motion properly before this Court. Defendant did not advance this theory in their brief.

Our Supreme Court has recently explained the appellate courts cannot advance issues and arguments the parties have not preserved and advanced for themselves: "[I]t departs from the well-settled rule . . . that appellate courts may not address an issue not raised or argued by [the parties] for it is not the role of the appellate courts to create an appeal for an appellant." *In re E.H.*, __ N.C. __, __, 919 S.E.2d 233, 239 (2025) (internal citation and quotation marks omitted).

13

## V.    Conclusion

All Plaintiffs clearly alleged sufficient facts and interests to establish standing to challenge Defendant's unlawful actions to remove a war grave marker and memorial under the statute.  N.C. Gen. Stat. §§ 100-2, 2.1 (2023).  The trial court failed to make requested and required findings and conclusions on the record.  This failure prevents this Court from determining whether the content and format of Plaintiffs objections comported with the requirements to establish taxpayer standing. N.C. Gen. Stat. § 1A-1, Rule 52(a) (2023).

The order of the trial court is properly vacated and remanded to the trial court to make supported findings and conclusions regarding these allegations and objections and whether they are sufficient to confer standing to the individual and entity Plaintiffs.  I respectfully dissent.